RECEIVED
AUG 3 1 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Richard Gong, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. 06-0125 (RWR) |
| v. ) | |
| ) | |
| MICHAEL CHERTOFF, SECRETARY, ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HOMELAND SECURITY, ) | |
| ) | |
| Defendant, ) | |
| ) | |

## MOTION TO DENY DEFENDANT'S REQUEST FOR MOTION TO DISMISS OR MOTION FOR SUMMARY JUDGMENT

Comes Now Richard Gong, Plaintiff and Pro Se moves to deny defendant's request for motion to dismiss or motion for summary judgment. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e et seq., and 42 U.S.C. Section 1981, Defendant denied me the position of Physical Security Specialist/Law Enforcement Security Officer (LESO)[1], failure to promote[2], law enforcement retirement coverage (Exhibit 1)[3], harassment, hostile work environment and threats of termination[4] because of

---

[1] Denied a position as Physical Security Specialist/Law Enforcement Security Officer because agency has claimed that I have not completed the Mixed Basic Police Training Course. I was reclassified to a lower position by my management as only a Physical Security Specialist with no arrest authority or police powers.

[2] The position of Physical Security Specialist/LESO has a Promotion Potential of GS-12.

[3] The Merit System Protection Board has granted law enforcement officer retirement to those that the meet certain criteria. I have held a law enforcement officer retirement in prior federal employments. (Exhibit 1) and would be granted this status.

[4] The Agency has terminated employees failing to complete the Mixed Basic Police Training Course. (Exhibit 9)

1

my race Asian-American, color dark-skinned and national origin Chinese. I seek from the Defendant a reinstatement of my former position and compensatory damages. In support of this Motion, Plaintiff respectfully submits Official Documents, Agency Policies, Internal Memos, Exhibits and a Witness Statement.

## I. INTRODUCTION

I was hired as a Physical Security Specialist/Law Enforcement Security Officer for the Federal Protective Service (FPS) in Mobile, AL. Prior to applying and taking the job, I read the announcement carefully as to the requirements of the position.

The Defendant discriminated against me for being Asian, Dark Color and Chinese. The Defendant agency made a significant change in the reclassification my job title from Physical Security Specialist/Law Enforcement Security Officer (LESO) to Physical Security Specialist (PSS), (Exhibit 2, page 2) and (Exhibit 7, page 2-3). The agency has failed to promote me to the next grade of GS-11 after one year of satisfactory performance (Exhibit 1,)[5]. The Defendant has threaten to terminate me for not completing the basic training and has terminated several employees for not completing the basic training (Exhibit 3). The Defendant made significantly changes to my responsibilities by changing my duties and replaced me with another Physical Security Specialist/Law Enforcement Security Officer before I could transfer out to another federal agency.

## II. ARGUMENT

According to the Official Vacancy Announcement #0440181 (Exhibit 4) from the Department of Homeland Security, Report of Investigation, dated March 16, 2005, (page

---

[5] I was hired at level GS-09 and had satisfactory performance, but was not promoted to GS-11 after one complete year.

2

3 of 6) clearly states: "Candidates selected must successfully complete the mixed Basic Officers Training Program if not already completed upon entry." According to the statement from the official vacancy announcement, I was exempted from taking the Mixed Basic Police Training Course (MBPTC) because I have completed the MBPTC course twice, one with the U.S. Secret Service in 1989 and again with U.S. Immigration and Naturalization Service in 1997.[6]

    I learned that this is not the case upon taking the position. I learned that former Deputy U.S. Marshal Charlie Moore and Director Gary Beard purposely and willfully wanted to placed me in a extremely hostile environment and repeat the harassment that happened in February 2001. Attached is (Exhibit 5) a copy of the official U.S. Marshal Student roster and statement from a fellow student who witnessed the racially hostile incident that occurred at the FLETC.

    The Deputy U.S. Marshal Student who witnessed the discriminatory acts was Mr. Andy L. Fisher. Mr. Fisher stated in writing to me: "**What I seen was that during this period Inspector Moore was always on you by singling you out by saying you shouldn't be there, and making comments about your PT (physical Training) abilities. With your PT abilities, he would always push you or "brow beat you" per say to work harder. But since you had already past the initial PT test, Inspector Moore should have been on the <u>recruits that didn't passed</u> the initial PT test but yet he had to continue to push the issue and continue with the harsh or "bully" treatment.**" Mr. Fisher has offered to testify in this case.

---

[6] As noted in the U.S. Department of Homeland Security Report of Investigation clearly shows my certification and transcript of the Mixed Basic Police Training Course.

3

I finished in the top half of the Physical Test (PT) and there were at least five students who did not past the PT. Yet, Mr. Moore discriminated against me because I was the only Asian minority in the whole class with deliberate constant harassment during class and outside the classroom which created a hostile work environment.

According to FPS own policy memo dated October 03, 1998 from the Assistant Commissioner (Exhibit 6) taken from the Report of Investigation "waivers will no longer be granted to those personnel who are not graduates of the Federal Law Enforcement Training Center (FLETC). A review of current policy indicates we are unable to provide the required supplemental training for personnel who are not FLETC graduates." The transcripts I provided clearly state that I am a FLETC graduate.

The Defendant claims (page 2) of STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE submitted to the court) "The employee must have no break in employment in the law enforcement field of longer than three years after graduating from training."

The break of more than three years from law enforcement was caused by Mr. Charlie Moore's discriminatory and hostile actions in which they forced me to resign from the U.S. Marshal Service in February 2001.[7] I had no choice but to transfer to another federal agency to avoid any more racially hostile actions from the Marshal Service.

According to FPS Policy Handbook, Chapter 2, Authority, Police Powers and Jurisdiction which was already submitted by Defendant's Counsel under Appointment of FPS Police Officers and LESO under 40 U.S.C. 318, (Exhibit 7, page 7) clearly states a

---

[7] If I remained with the U.S. Marshal Service, there would have been no break in the law enforcement field.

4

person "Must be graduate of FLETC Basic Police School or former FPS Police Academy. Employees must have no break in employment in the law enforcement field of longer than 3 years." The Defendant left out the continuation paragraph in the (Motion for Summary Judgment (page 7) that followed. The following paragraph states: "Complete the in-service training prescribed for the FPS Police Officer and LESO, if training in above paragraph was not met within the last 3 years."

In the present action, the Defendant has deliberately denied the very existence of the training exception even though the exception is stated in the FPS policy, and used by similarly situated FPS personnel. Defendant has attempted to mislead this Court into believing that undergoing the Mixed Basic Police Training is absolutely mandatory if the employee has been out of law enforcement for over three years (which was cause by Mr. Moore). This claim is not supported by FPS policy, and is inconsistent with the application of this FPS policy exception to non-minority, similarly situated personnel.

According to Defendant's Motion for Summary Judgment (page 9), Mr. Beard states: "The refresher course to which the complainant referred does not exist." Yet, in the Report of Investigation (Exhibit 8), Mr. Gary Beard stated the following to the investigator: "the Aggrieved Person attended some basic police academies. He said there is a post-basic (or refresher) training program that is three weeks long."

The Agency had multiple opportunities to send me to the ALERTP[8] refresher training. They were held at the FLETC:
ALERTP-401, In-Service Training Class was held in February, from 02 to 13, 2004
ALERTP-402, In-Service Training Class was held March, from 29 to April to 09, 2004

---

[8] ADVANCED LAW ENFORCEMENT REFRESHER TRAINING (ALERT) PROGRAM.

ALERTP-403, In-Service Training Class was held in May, from 17 to 28, 2004

ALERTP-404, In-Service Training Class was held in June, from 07 to 18, 2004

ALERTP-405, In-Service Training Class was held in July, from 19 to 30, 2004

ALERTP-406, In-Service Training Class was held in August, from 16 to 27, 2004

ALERTP-407, In-Service Training Class was held in Sept, from 09 to 17, 2004

An Internal Memo dated October 28, 2004 (Exhibit 9) clearly shows a refresher training course has been available and now mandatory for employees. It states: "The ALERT program provides FPS law enforcement personnel with not only a review of basic law enforcement skills, but also an additional level of advanced education and training to expand their knowledge and skills."

Even with the break of three years, the agency purposely and willfully denied not to send me to the refresher training. The agency claims that they offered no waivers, but I never seek a waiver or asked for the waiver. The agency has simply masked their intentions to hide their discriminatory actions.

According to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, (page 13) "According to Acting Director Beard, [Plaintiff's previous law enforcement experience [did] not match the job specific skill sets required of the position for which he was hired." Mr. Beard states that it is my law enforcement EXPERIENCE not TRAINING that did not match the job…Mr. Beard never mention the official training that I already completed.

The Defendant also treated similar situated individuals who did not attend the Mixed Basic Police Training Program at the Federal Law Enforcement Training Center more favorably or exceeded the three year limit.

According to Mr. Kenneth Ehinger, Deputy Director, Mission Support for FPS (race Caucasian) (Exhibit 10) states in his affidavit "Mr. Andrew was placed different than Mr. Gong, since he is a supervisor position and does not have to meet the requirements of Mr. Gong's position." Unfortunately, the agency has made a statement that is completely untrue. When I worked for Mr. Andrew (he was my immediate supervisor), I was directly told by him that he never completed the Mixed Basic Police Training Course at FLETC.

Mr. Ehinger continues to state: "Second, Mr. Andrew had successfully completed the FLETC Police Training Program and continued to work in the law enforcement field for the Department of Defense prior to him entering on duty with the Agency." Again, Mr. Ehinger statement is untrue, Mr. Andrew stated to me that his former employment was with the U.S. Department of Veterans Affair Police (VA). The Veterans Affair Police are NOT trained at FLETC (see Exhibit 11). The VA conducts there own five week police training at North Little Rock VAMC in Arkansas and is not part of FLETC or certified by FLETC.

Mr. Ehinger continues to state (Exhibit 10): "Furthermore, Mr. Andrew was still required to attend and graduate from the FPS Professional Development and Training Center." Mr. Andrew's training was completely <u>waived by FPS</u> and only had to <u>complete the in-service refresher training</u>. Mr. Andrew position as a supervisor does not make him exempt from training. Mr. Andrew's former position was a FPS Physical Security Specialist/Law Enforcement Security Officer (LESO). The exact position I held after Mr. Andrew was promoted to supervisor. (Mr. Andrew's race is Caucasian)

7

To show that an employer's proffered nondiscriminatory reason for an employment action is pretextual, a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 490 (10th Cir. 2006)

In 2005, I announced to FPS that I was transferring to another federal agency. The transfer was to avoid being terminated by FPS as they have done to several other FPS employees. Ms. Leigh-Ann Hackney was hired as a FPS Physical Security Specialist/LESO to replace me. During a conversation, Ms. Hackney stated to me that she work in a law enforcement position with the Bureau of Alcohol, Tobacco, and Firearms. Ms. Hackney left her position in law enforcement to pursue a career with her friend to open a restaurant. The time she left was over three years. She told me she was shocked that she was exempt from the Mixed Basic Police Training and only had to complete the in-service training to become a full fledge law enforcement officer.

Mr. Ehinger in his statement (Exhibit 10), "Regarding Ms. Hackney, according to her unofficial personnel file, she resigned from the Bureau of Alcohol, Tobacco, Firearms and Explosives from a law enforcement position on September 25, 2000." Mr. Ehinger makes his statement from "**her unofficial personnel file**", there is no such thing as unofficial personnel file kept on federal employees. The only official file kept on employees is called Official Personnel Folder (OPF) and Performance Appraisal. (Ms. Hackney race is Caucasian)

In <u>Reeves V. Sanderson Plumbing Products, Inc</u>. (99-536) 530 U.S. 133 (2000) 197 F.3d 688 reversed. "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. See *id.*, at 517 ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the tier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the fact finder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."

"Since Title VII's principal focus is on protecting individuals, rather than a protected class as a whole, <u>an employer may not escape</u> liability for discriminating against a given employee on the basis of race simply because it can prove it treated other members of the employee's group favorably." <u>EMANUEL DIAZ, Plaintiff-Appellant, v. NEW YORK CITY TRANSIT AUTHORITY, Defendant-Appellee.</u> No. 03-9240 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT 98 Fed. Appx. 58; 2004 U.S. App. LEXIS 10247[9]

In another similar case a FPS employee was terminated because she did not attend the Mixed Basic Police Training. "the agency's own deputy regional director admitted that there was no way of knowing whether the employee could tolerate running and thus complete the training." (Exhibit 3)

In order to prove a claim of discrimination, a plaintiff may proceed in one or two ways: A Plaintiff may prove a prima facie case of discrimination by direct evidence,

---

[9] LexisNexis

thereby Forcing the Agency to prove, as an affirmative defense, that it would have taken the same action absent the discriminatory motivation. Cooper-Houston v. Southern ry. Co., 37 F. 3d 603, 604 n. 2 (11th Cir. 1994) (Tjoflat, J.) Alternatively, a Plaintiff may prove a prima facie case of discrimination by circumstantial evidence, which requires the employer to articulate a legitimate, non-discriminatory reason for the challenged action, at which point the employee may attempt to prove that the articulated reason is pretextual. McDonnell Douglas Corp. V. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). A Plaintiff need not prove pretext, but need only show evidence from which a jury could reasonably find that the employer's articulated reason is pretextual. Arrington v. Cobb County, 139 F.3d 865 (11th Cir. 1998). If the Plaintiff shows sufficient evidence that the articulated reason is pretextual, i.e. unbelievable, then summary judgment will be denied. *See generally Chapman v. A.I. Transport,* 229 F.3d 1012 (11th Cir. 2000); Combs v. Plantation Patterns, 106 F. 3d 1519 (11th Cir. 1997), cert. denied, 522 U.S. 1045 (1998).

Finally, I have attached (Exhibit 12), this document was taken from the Official **Department of Homeland Security website** www.fletc.gov **where it details the Program** Title: Mixed Basic Police Training Program (MBPTP). The Program Description clearly states: "This program provides training in the basic law enforcement knowledge, skills and abilities that a new Federal Officer must understand…"

The program description also states: "Officers receive instruction in a number of areas, including Officer Safety and Survival, Communications and Interviewing, Criminal Law, Detention and Arrest, Narcotics, Dynamics of Terrorism, VIP Protection, Physical Security, Firearms, Physical Techniques, and Driver Training.

Also attached in (Exhibit 12), is a copy of the Police Training Schedule which I completed and graduated in 1989 that details the courses taught. The courses that I received from the U.S. Secret Service are identical to the courses presented by FLETC. The training offered by U.S. Secret Service exceeded the requirements of FLETC.

### III. CONCLUSION

The official vacancy announcement clearly states that an appointment to Physical Security Specialist/Law Enforcement Security Specialist must be a graduate of the Mixed Basic Police Training. I have clearly proven requirement with transcripts of my training.

Several other employees were treated more favorable because of their race, color and national origin.

The discriminatory actions of Mr. Charlie Moore were at least witnessed by one former student.

The exhibits, official documents, internal memos, and witness statement has shown that the Defendant has not proffer any articulated legitimate reasons and their explanations are unworthy of credence and a pretext for discrimination and retaliation.

The Plaintiff has produced direct evidence of discriminatory intent, which the Defendant cannot defeat on Summary Judgment. There is sufficient evidence that the articulated reason is pretextual, therefore summary judgment must be denied. I respectfully MOVE that the Honorable Judge deny the Defendant's Motion to Dismiss or Motion for Summary Judgment.

Respectfully Submitted,

_____
Richard Gong, Pro Se
Plaintiff
P. O. Box 25063
Arlington, VA 22202

Certificate of Service

I certify that copy of the attached documents was sent by First Class Mail on August 30, 2006 to:

AUSA Marian Borum
U.S. Attorney, District of Columbia
Judiciary Center – Civil Division
555 Fourth Street, NW
Washington, DC 20530


_____
Richard Gong
Plaintiff, Pro Se
P. O. Box 25063
Arlington, VA 22202