\

## <u>Richard Gong V. Michael Chertoff</u>

## Civil No. 06-0125 (RWR)

## Exhibit 1

# FEDERAL LAW ENFORCEMENT PAY AND BENEFITS

---

## REPORT TO THE CONGRESS



States Office... ...nnel Mana...
...ames, Di...

**Issue:  Disparities in LEO Retirement Coverage as a Result of Litigation**

Both the Merit Systems Protection Board (MSPB) and the U.S. Court of Appeals for the Federal Circuit have issued decisions that have created additional disparities within the broad law enforcement community and weakened the LEO retirement program as a management tool.

As previously noted, the statutory definition of "law enforcement officer" sacrifices specificity in favor of flexibility and has resulted in litigation that has exacerbated differences in retirement coverage among groups of employees.  At one time, LEO retirement coverage was decided solely on the basis of duties assigned to a position (i.e., a "position-oriented" approach).  However, administrative and judicial decisions have shifted coverage determinations to an individual, case-by-case approach.  The shift to individual determinations can be traced back to the decision in *Ellis v. United States*, 610 F.2d 760 (Ct.Cl.1979).  In *Ellis*, the Court of Claims overturned the longstanding policy that special retirement eligibility could be based only on the official duties of an employee's position of record.  Instead, *Ellis* held that an employee could earn enhanced retirement credit, despite the fact that his position was not approved for enhanced coverage, based on the fact that his actual duties qualified for enhanced service credit.  Thus, *Ellis* emphasized an "incumbent-oriented" approach as an alternative to the "position-oriented" approach set out in OPM's LEO retirement regulations.  As a result of *Ellis*, agencies must make thousands of individual service credit determinations.  Since these determinations are made on an individual, fact-intensive, case-by-case basis, the resulting decisions tend to be inconsistent when viewed across employee groups.[12]

After the *Ellis* decision, MSPB considered various criteria for determining whether the actual duties of an individual claimant satisfy the statutory and regulatory requirements for LEO coverage.  In a line of cases beginning with *Hobbs v. Office of Personnel Management*, 58 M.S.P.R. 628 (1993), MSPB developed seven factors or indicia to determine whether an individual was a "law enforcement officer."  MSPB determined that a "law enforcement officer" within the definition contemplated by statute commonly (1) has frequent direct contact with criminal suspects; (2) is authorized to carry a firearm; (3) interrogates witnesses and suspects, giving *Miranda* warnings when appropriate; (4) works for long periods without a break; (5) is on call 24-hours a day; (6) is required to maintain a level of physical fitness; and (7) is exposed to hazard.  See *Hobbs v. Office of Personnel Management*, 58 M.S.P.R. 628 (1993); *Sauser v. Office of Personnel Management*, 59 M.S.P.R. 489 (1993); *Peek v. Office of Personnel Management*, 63 M.S.P.R. 430 (1994), aff'd, 59 F.3d 181 (Fed. Cir. 1995); *Bingaman v. Department of the Treasury*, 127 F.3d 1431 (Fed. Cir. 1997); *Hannon v. Department of Justice*, 82 M.S.P.R. 315 (1999), aff'd, 234 F.3d 674 (Fed. Cir. 2001).

The seven-factor test attempted to standardize the "incumbent-oriented" approach to LEO coverage decisions.  Ultimately, however, MSPB found the "incumbent-oriented" approach and the seven-factor LEO test to be unworkable.  In 2000, MSPB reassessed this approach, and in *Watson v. Department of the Navy*, 86 M.S.P.R. 318 (2000), announced that it would no longer use it.  Instead, MSPB decided that it would give due weight to the reasons put forward by the

---

[12] For example, the Department of Homeland Security has four Federal Protective Service (FPS) police officers who have been granted law enforcement officer retirement through appeals to MSPB, while hundreds of other FPS police officers do not enjoy such coverage.

\

# Richard Gong V. Michael Chertoff

## Civil No. 06-0125 (RWR)

## Exhibit 2

# EMPLOYEE PERFORMANCE REVIEW AND RATING

## PART I.  GENERAL INFORMATION

| EMPLOYEE'S NAME | | | SOCIAL SECURITY NUMBER | CORRESPONDENCE SYMBOL | PAY | |
|---|---|---|---|---|---|---|
| LAST | FIRST | MI | | | PLAN | GRADE |
| Gong | Richard | | 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 | 4PSA | GS | 9 |

| TYPE OF RATING | | | REVIEW PERIOD | | TYPE OF POSITION | |
|---|---|---|---|---|---|---|
| [X] ANNUAL | [ ] INTERIM | FROM<br>10/01/2004 | TO<br>9/30/2005 | | [ ] SUPERVISORY | [X] NONSUPERVISORY |

## PART II.  CRITICAL ELEMENT RATING (Attach performance plan) (Use additional forms if there are more than 7 critical elements)

| CRITICAL ELEMENT | RATING (Check one) | | COMMENT ON THE EMPLOYEE'S PROGRESS TOWARD MEETING THE PERFORMANCE STANDARD FOR EACH CRITICAL ELEMENT (Use additional pages if necessary.) |
|---|---|---|---|
| | SUCCESSFUL | UNSUCCESSFUL | |
| 1. | X | | Employee evaluates and assesses physical security for assigned buildings in order to provide adequate security and quality customer service for tenants and visitors. |
| 2. | X | | Employee establishes and maintains effective and frequent contacts/relationships and communication with co-workers and clients. |
| 3. | X | | Employee performs a variety of law enforcement activities to prevent criminal and disruptive activities. |
| 4. | X | | Employee provides advice and guidance on crime prevention trends and techniques. |
| 5. | N/A | | Employee performed the duties as a Uniformed Police Officer.  Conducts regular patrols of assigned Federally Owned/leased property, inspecting for unauthorized entry, theft, espionage, sabotage, vandalism, or other criminal activity. When any of the preceding is discovered, institutes emergency procedures, secures the area to prevent further loss or destruction of property, protects people, and apprehends the person(s) who precipitated the emergency. |
| 6. | | | |
| 7. | | | |

| PART III. SUMMARY RATING | | PART IV. PROGRESS REVIEW CERTIFICATION | |
|---|---|---|---|
| [X] SUCCESSFUL | [ ] UNSUCCESSFUL | [X] PROGRESS REVIEW COMPLETED | DATE<br>3-25-2005 |

**GENERAL SERVICES ADMINISTRATION**

GSA FORM 3440 (REV. 3-97)
Prescribed by OAD 9430.2

## PART V. COMMENTS ON OVERALL PERFORMANCE

COMMENT ON THE EMPLOYEE'S OVERALL PERFORMANCE CITING SPECIFIC EMPLOYEE PROJECTS OR OUTPUTS. USE ADDITIONAL PAGES, IF NECESSARY.

Employee Richard Gong is a dedicated professional Physical Security Specialist. PSS Gong is not rated on Critical element #5, due to not completing required training to fulfill the conditions of Police Certification. During this rating period he completed all Physical Security Assessments for his area of responsibility and also traveled outside his assigned area to assist with numerous Physical Security Assessments, covering the Montgomery, Alabama area of responsibility. PSS Gong conducted numerous Guard Posts Inspections covering a wide geographical are of the Gulfcoast of Mississippi and Alabama in support of the massive FEMA Security Posts during the national disaster from Hurricane Katrina ensuring compliance with the Alabama and Mississippi Statewide Contracts. PSS Gong performed the duties of COTR, assisting with monitoring Contract Guard program for Alabama Statewide Contract to include classroom, weapons training and administering Guard testing for his assigned area.

## PART VI. TRAINING AND DEVELOPMENT

DISCUSS PROFESSIONAL GROWTH NEEDS AND AVENUES WHICH THE EMPLOYEE CAN PURSUE TO MEET THESE NEEDS.  USE ADDITIONAL PAGES, IF NECESSARY.

## PART VII. SIGNATURES

| RATING OFFICIAL | NAME OF RATING OFFICIAL | DATE |
|---|---|---|
|  | Ellis R. Andrew, Area Commander | 10/19/05 |
| REVIEWING OFFICIAL (Necessary only if rating is at the unacceptable level) | NAME OF REVIEWING OFFICIAL | DATE |
|  | John C. Glynn, Jr, District Commander | 10/19/05 |
| EMPLOYEE (Indicate only that a copy of rating was received, not necessarily agreement with the rating.) |  | DATE 10-19-05 |

GSA FORM 3440 (REV. 3-97) BACK

\

# <u>Richard Gong V. Michael Chertoff</u>

## Civil No. 06-0125 (RWR)

## Exhibit 3

Search      ▶                                           Home | Contact Us | Site Map | Log In @



**AFGE**
PROUD TO MAKE
AMERICA WORK

| About AFGE | News, Media, Publications | Member Benefits & Resources | Government Wide Issues | Agencies | Education & Organizing | Legislation & Politics | Rights & Representation |

**PRESS RELEASES**         Home > News, Media, Publications > Press Releases >

**Member Log In**      ▶                                       Print Page | Email to a Friend

FOR IMMEDIATE RELEASE:                                     Contact:   **Emily Ryan**
**August 26, 2005**                                             (202) 639-6421
                                                            eryan@afge.org

## AFGE WINS BACK DHS EMPLOYEE'S JOB AFTER WRONGFUL TERMINATION

*No legitimate reason for agency to remove employee, said arbitrator*

(Washington) - The American Federation of Government Employees (AFGE) recently helped an employee of the Department of Homeland Security win her job back after the agency fired her claiming she was medically incapable of completing job training.

The employee, a field training officer with the Immigration and Customs Enforcement, Federal Protective Services, was required to attend and complete the Mixed Police Basic Training Program. Following knee surgery, she was told that she could not attend the training and soon after was fired from her job. After her knee surgery, she was advised by a doctor not to run; however a second opinion allowed her to "continue with activities as tolerated." Regardless of this, DHS removed the employee from her job.

AFGE argued that DHS did not prove the grievant was medically unable to complete her training. In addition to the fact that the second doctor did not ban her from running, the agency's own deputy regional director admitted that there was no way of knowing whether the employee could tolerate running and thus complete the training. The arbitrator found in favor of AFGE and awarded that the grievant be reinstated with back pay.

"This was nothing more than a case of DHS abusing its authority," said AFGE Legal Rights Attorney Angelia Wade, who represented the grievant. "This woman was a longtime federal employee and a qualified field training officer. DHS swooped in and took her job from her without even proving that she couldn't function in her position. The agency decided for the grievant whether she could do her job, without giving her the opportunity to succeed or fail."

"This should serve as notice to DHS and any other government agency that wrongfully terminates an employee—AFGE stands behind its members and will fight every step of the way. No agency has the right to remove an employee without first knowing all the facts and considering all opinions. Anytime this happens, you better believe AFGE will be right there to defend the civil servants who give their all," AFGE Field Services Department Director Joseph Henderson said.

### ###

*The American Federation of Government Employees (AFGE) is the largest federal employee union, representing 600,000 workers in the federal government and the government of the District of Columbia.*



Join AFGE
Become a Member Today

Nat'l President: John Gage - Nat'l Sec/Treas: J. David Cox - Nat'l VP, Women's & Fair Practices: Andrea E. Brooks
80 F Street N.W. - Washington, DC - 20001 - (202)737-8700
comments@afge.org | Legal Notices | Log In | Home | Privacy

Copyright 1995-2006 AFGE. All rights reserved.

\

# **Richard Gong V. Michael Chertoff**

## **Civil No. 06-0125 (RWR)**

## **Exhibit 4**



U.S. General Services Administration

| Home | Buying Through GSA | Selling to the Government | About GSA | Contacts |

## Vacancy Information

Email to a Friend



| | |
|---|---|
| Announcement Number: | 0440181 |
| Vacancy Description: | Physical Security Specialist (LESO) |
| Open Period: | 12/03/2003 - 12/16/2003 |
| Series/Grade: | GS-0080Z-09/11/12 |
| Salary: | $42,978.00 TO $74,327.00 |
| Promotion Potential: | GS-12 |
| Hiring Agency: | IMMIGRATION & CUSTOMS ENFORCEMENT, BUREAU OF |
| Duty Locations: | 1 vacancy in Mobile, AL |
| Remarks: | THE PERSON SELECTED FOR THIS POSITION WILL BE AN EMPLOYEE OF THE DHS, BUREAU OF IMMIGRATION & CUSTOMS ENFORCEMENT (BICE) (GSA IS CURRENTLY PROVIDING HUMAN RESOURCES SERVICES FOR THIS VACANCY.) |

| Skills | Skills Description |
|---|---|
| 033 | Position will include training in the carrying and use of firearms. |
| 136 | Applicants must pass a pre-employment medical examination, drug screening, and background investigation. |

For more information, Contact:  Ricky Miller, 404-331-3186 ricky.miller@gsa.gov

## Additional Information

Vacancy Location:
Department of Homeland Security
Bureau of Immigration and Customs Enforcement (BICE)
Federal Protective Service
Mobile, AL

Area of Consideration:

Candidates with Civil Service status, Reinstatement eligibles, persons
eligible for non-competitive appointment under Special Authorities,
Disabled persons and 30% Disabled Veterans, preference eligibles or

https://jobs.quickhire.com/scripts/gsa.exe/runjobinfo?aOrg=1&aJob=4429&Username=~BF  12/24/2003

veterans who have been separated from the armed forces under honorable conditions after 3 years or more of continuous active service may apply.

Applications will be accepted from candidates eligible for the Career Transition Assistance Program (CTAP) or the Interagency Career Transition Assistance Program (ICTAP) in the local commuting area.

Bargaining Unit Status: NFFE

Duties of the Position:

At the target grade level, the incumbent is primarily responsible for the physical security program as it applies to the client agencies within the buildings assigned. Determines the security necessary for each building tenant, including the specific types of devices, systems, or services that would most effectively mitigate the risks identified.

Develops and promotes positive working relationships with customer agencies and client personnel and maintains continuous liaison with top management officials of customer agencies, as well as similar relationships within GSA.

As the Contracting Officer's representative, carries out inspections to assure compliance with contract specifications. On a regular and recurring basis, performs duties as a uniformed law enforcement official under 40 U.S. Code 318. Enforces and assures compliance with statutes, laws, GSA building rules and regulations, and protects the civil rights of all persons on Federal property under the charge and control of GSA.

Qualification Requirements:

QUALIFYING BASED ON EXPERIENCE:

Applicants must demonstrate, in their resume and responses to the vacancy questions that they meet the qualification requirements described below. Applicants must meet all qualification and eligibility requirements for the position advertised within 30 days of the closing date of the announcement. In order to be considered qualified, applicants must demonstrate, in their resume and responses to questions, at least one year of specialized experience equivalent to the next lower grade.

GS-9

Knowledge of security principles, and practices to analyze and resolve security problems for multi-tenant/storied buildings. Identifies security deficiencies and prepares narrative reports, conducts crime prevention studies, assists in conducting inspections of worksites for fulfillment of security contracts and law enforcement duties with arrest authority.

GS-11/12

knowledge of security principles, and practices to independently analyze and resolve complex security problems for large multi-tenant/storied buildings. Evaluating the effectiveness of existing security practices; developing security plans; developing comprehensive narrative reports on security surveys, crime assessments, and security system design; conducting inspections of worksites for fulfillment of security contracts and law enforcement duties with arrest authority.

QUALIFYING BASED ON EDUCATION

Major study - law enforcement, criminology, criminal justice, police science, law (general) or other related education.

Education may be substituted for experience in accordance with the Operating Manual for Qualification Standards for General Schedule Positions. For further information, refer to


EX 8
Page 6 of 6 pages

http://www.opm.gov/qualifications/index.htm.

GS-9
A master's or equivalent graduate degree OR 2 full years of progressively
higher level graduate education leading to such a degree OR LL.B. OR J.D.,
if related,

GS-11
Three full years of progressively higher level graduate education or Ph.D.
or equivalent doctoral degree., if related

GS-12
Education does not substitute for experience at the GS-12 level

Applicants must meet all qualification and eligibility requirements for the
position advertised within 30 days of the closing date of the announcement.

Applicants willl be rated on the extent and quality of experience,
education, and training relevant to the duties of the position. Eligible
applicants will receive a numerical rating based on their responses to the
application questions for this position submitted on-line via GSAJobs
(QuickHire). These responses must be substantiated by the resume submitted.
Applicants who do not respond to the application questions may be rated
ineligible.

Federal employees must meet time-in-grade requirements within 30 days of
the closing date of the announcement.

Conditions of Employment:

Any applicant tentatively selected for this position will be required to
submit to urinalysis to screen for illegal drug use prior to appointment.
This position is also subject to subsequent random drug screening.

This position requires frequent travel.

This position may require shift work.

A valid state drivers license.

Incumbent must be able to operate a Government-owned or leased motor
vehicle.

All selected applicants must sign a mobility agreement.

This position has Public Trust Level of Moderate and appointment is subject
to investigation and favorable adjudication.

Level 2 Noncritical sensitive:
This position is a noncritical-sensitive national security position.  To
work in this position, you must undergo a security investigation and
receive a national security clearance (Secret or Confidential) from the GSA
security office.

Prior to Appointment, all applicants must successfully pass:
(a) medical examination
(b) background investigation
(c) drug test

After entry into position, all employees must periodically:
(a) take and pass a medical and physical fitness examination
(b) re-qualify in skill areas in accordance with current FPS policy
(c) be subject to random drug testing.

Candidates selected must successfully complete the mixed Basic Officers
Training Program if not already completed upon entry.

https://jobs.quickhire.com/scripts/gsa.exe/runjobinfo?aOrg=1&aJob=4429&Username=~E...  12/24/2003

EX 8
Page 3 of 6

Additional Information:

Individuals who have special priority selection rights under the GSA's Career Transition Assistance Program (CTAP) or the Interagency Career Transition Assistance Program (ICTAP) must be well qualified for the position to receive consideration for special priority selection. CTAP and ICTAP. To receive this priority consideration, you must submit the required information outlined in the Supplemental Application Material section of this vacancy announcement. Further information on CTAP/ICTAP can be viewed at http://www.opm.gov/ctap/index.htm

Travel/Relocation Expenses:

The Department of Homeland Security will not pay travel, transportation, and relocation expenses. Any travel, transportation, and relocation expenses associated with reporting for duty in this position will be the responsibility of the selectee.

Reasonable accommodation:

DHS provides reasonable accommodations to applicants with disabilities. If you need a reasonable accommodation for any part of the application or hiring process, please notify us immediately. The decision on granting reasonable accommodation will be on a case-by-case basis.

Misc.

This vacancy announcement does not preclude filling this position by other means, such as new appointment from an Office of Personnel Management list of eligibles, Delegated Examining Unit list of eligibles, reassignment, transfer, reinstatement, or noncompetitive action.

GSA does not accept applications or application material that is received with Government-paid postage.

Applicants selected for Federal employment will be required to complete a "Declaration of Federal Employment" (OF-306) prior to being appointed to determine their suitability for Federal employment. Failure to answer all questions truthfully and completely or providing false statements on the application may be grounds for not hiring the applicant, for dismissing the applicant after they begin work, and may be punishable by fine or imprisonment (U.S. Code, Title 18, Section 1001).

Application Procedures:

Applications submitted via GSAjobs (QuickHire) must be received before midnight Eastern Standard Time on the closing date of the announcement. No extensions will be granted. If applying on-line poses a hardship to any applicant, the servicing Human Resources Office listed on the announcement will provide assistance to ensure that applications are submitted on-line by the closing date. Applicants MUST CONTACT the Servicing Human Resources Office PRIOR TO THE CLOSING DATE to speak to someone who can provide assistance for on-line submission.

Unless otherwise stated on this announcement, all required supplemental application material must be received within 48 hours of the closing date of the announcement (not including Saturdays, Sundays, or government holidays). This proof must be sent to either the contact address or fax number identified below and must include your name and the announcement number for which applying. Failure to follow the above instructions may result in your application not being considered.

Applicants who cannot apply on-line through GSAjobs (QuickHire) must submit their application material to the Human Resources Office at the address listed on the vacancy announcement. All applicants must respond to the questions listed on the vacancy announcement. Application material must be received by the closing date of the announcement. No exceptions.

https://jobs.quickhire.com/scripts/gsa.exe/runjobinfo?aOrg=1&aJob=4429&Username=~E...  12/24/2003

EX 8
Page 4 of 6

Supplemental Application Material -- Read the below instructions carefully, failure to submit applicable supplemental application material may result in no consideration for the position.

Supplemental Application Material must be received within 48 hours of the closing date of the vacancy announcement. No exceptions.

Applicants claiming CTAP/ICTAP eligibility must submit proof that they meet the requirements of 5 CFR 330.605(a) for CTAP and 5 CFR 330.704 for ICTAP. This includes a copy of the agency notice, their most recent Performance Rating, and their most recent SF-50 notifying current position, grade level, and duty station. CTAP and ICTAP eligibles will be considered well qualified if they earn a minimum score of 85 (prior to the assignment of veteran's preference points). For more information on CTAP/ICTAP eligibility requirements, please visit the following site: http://www.opm.gov/ctap/index.htm.

Education Requirements:

If you are applying for a position which requires specific post high school education (degree or specific course work) or are substituting education for experience, you must submit a copy of your most current transcript(s) or a list of coursework above high school, including class titles, grades, and hours. Failure to provide this information may result in a rating of ineligible.

Veteran's Information

If you are applying under the Veteran's Employment Opportunity Act, provide a copy of your DD-214 and if applicable a copy of SF-15 with the requested supporting documentation or other proof of veteran's preference. Failure to provide this information may result in non-consideration for this position.

Additional information on veteran's preference is available in the Vet's Guide that can be found at http://www.opm.gov/veterans/html/vetguide.htm

Federal employees or applicants applying for reinstatement must submit a copy of their latest SF-50, Notification of Personnel Action, which shows current position, title, series, grade and career tenure. Generally, SF-50's for awards do not contain this information.

Applicants applying under a Special Appointment Authority are responsible to submit proof of eligibility for appointment. Information may be obtained at the following Office of Personnel Management website http://www.usajobs.opm.gov/b1.htm.

Send all supplemental application material to the following Human Resources Office:

General Services Administration
Office of Human Resources
77 Forsyth ST Suite 650
Atlanta, GA 30303
Phone (404) 331-3186
Fax (404) 331-1721

ALL APPLICANTS FOR FEDERAL EMPLOYMENT RECEIVE CONSIDERATION WITHOUT REGARD TO RACE, RELIGION, COLOR, NATIONAL ORIGIN, SEX, POLITICAL AFFILIATION, AGE (WITH AUTHORIZED EXCEPTIONS) OR ANY OTHER NONMERIT FACTOR.

| Apply to this Vacancy | View Vacancy Questions |
| --- | --- |
| Back to Vacancy Listing | |



\

# <u>Richard Gong V. Michael Chertoff</u>

## Civil No. 06-0125 (RWR)

## Exhibit 5

Revised February 1, 2001

# U.S. MARSHALS SERVICE
# USMSI # 103
## FEBRUARY 12, 2001 - APRIL 2, 2001

| | NAME | ASSIGNED DISTRICT | CITY AND STATE |
|---|---|---|---|
| 1 | Amsler, Rudy | DC/SC | Washington, DC |
| 2 | Annan, Sherri | W/TX | Midland, TX |
| 3 | Baptista, Jeffrey | S/TX | Laredo, TX |
| 4 | Battle, Linwood | DC/SC | Washington, DC |
| 5 | Beyersdorf, Eric | NV | Las Vegas, NV |
| 6 | Depatie, Ellen | DC/SC | Washington, DC |
| 7 | Epps, Dwayne | S/CA | San Diego, CA |
| 8 | Fisher, Andy | NM | Las Cruces, NM |
| 9 | Foley, Jeffrey | DC/SC | Washington, DC |
| 10 | Gong, Richard | NV | Las Vegas, NV |
| 11 | Halverson, Kent | NM | Albuquerque, NM |
| 12 | Hayes, Stephen | DC/SC | Washington, DC |
| 13 | Hocevar, James | ID | Pocatello, ID |
| 14 | Johnsen, Ryan | S/TX | Houston, TX |
| 15 | Kilpatrick, Tyrone | AZ | Tucson, AZ |
| 16 | Kline, Logan | KS | Wichita, KS |
| 17 | Magallan, Rodney | S/TX | Corpus Christi, TX |
| 18 | Mason, Jay | AZ | Phoenix, AZ |
| 19 | McCarthy, Brian | AZ | Phoenix, AZ |
| 20 | McCarthy, Matthew | DC/SC | Washington, DC |
| 21 | McDaniel, Tom | DC/SC | Washington, DC |
| 22 | McGaha, Scott | N/FL | Tallahassee, FL |
| 23 | Merkel, Norman | S/TX | Victoria, TX |
| 24 | Monson, James | W/TX | Del Rio, TX |
| 25 | Moschetta, Matthew | AZ | Phoenix, AZ |
| 26 | Muck, Nelson | W/TX | Del Rio, TX |
| 27 | Neff, William | C/CA | Los Angeles, CA |
| 28 | Neonakis, Anthony | E/NY | Brooklyn, NY |
| 29 | Nickerson, Walter | W/TX | El Paso, TX |
| 30 | Ortiz, Zulima | S/NY | New York, NY |
| 31 | Ratliff, Brandon | S/TX | Brownsville, TX |
| 32 | Rodriguez, Antony | DC/SC | Washington, DC |
| 33 | Schwaninger, Jason | W/TX | Del Rio, TX |
| 34 | Sclafani, William | DC/SC | Washington, DC |
| 35 | Scott, Kevin | W/TX | Alpine, TX |
| 36 | Shelton, Craig | E/KY | Lexington, KY |
| 37 | Soltys, John | CO | Denver, CO |
| 38 | Watson, Gary | S/TX | Brownsville, TX |
| 39 | Watson, Todd | AZ | Phoenix, AZ |

**Fisher, Andy, TSgt, 126FM, FMFA, 5866**

**To:** Richard Gong [richardgong@yahoo.com]

**Subject:** Letter

Rich,

Hey buddy, sorry for the delay. I am really not baling on this, I truly am busy and I have family issues.
But anyway, what I had seen was that during this period Inspector Moore was always on you by singling you out
by saying you shouldn't be there, and making comments about your PT abilities. With your PT abilities, he would
always push you or "brow beat you" per say, to work harder. But since you had already past the initial PT test,
Inspector Moore should have been on the recruits that didn't pass the initial PT test but yet he had to continue
to push the issue and continue with the harsh or 'bully' treatment.
Let me know if you need this in a letter or memo format and/or signed.
-Andy

Fisher, ANDy L.
Andy L Fish

5/18/2005

\

# Richard Gong V. Michael Chertoff

## Civil No. 06-0125 (RWR)

## Exhibit 6

GENERAL SERVICES ADMINISTRATION
Public Buildings Service

OCT   3 1998

MEMORANDUM FOR REGIONAL ADMINISTRATORS

ASSISTANT REGIONAL ADMINISTRATORS
PUBLIC BUILDINGS SERVICE

REGIONAL DIRECTORS
FEDERAL PROTECTIKE SERVICE

FROM:          CLARENCE EDWARDS
ASSISTANT COMMISSIONER
OFFICE OF FEDERAL PROTECTIVE SERVICE - PS

SUBJECT:       Instructional Letter PBS-IL-96-2
Appointment of Law Enforcement Authority - 40 U.S.C. 318
and 318d

Reference is made to the captioned subject matter dated February 29, 1996. To ensure
current and uniform training for Federal Protective Service Police Officers appointed
under 40 U.S.C. 318, waivers will no longer be granted to those personnel who are not
graduates of the Federal Law Enforcement Training Center (FLETC). A review of
current policy indicates we are unable to provide the required supplemental training for
personnel who are not FLETC graduates.

Therefore, the attached changes have been made and will be effective October 4, 1998.
Attached for your use is a new Section A., Part 1 and Part 2 of the Federal Protective
Police Officers Handbook. Please ensure the effected pages are removed and the revised
pages are inserted into Instructional Letter PBS-IL-96-2.

Attachment



1800 *P Street*, NW, Washington, DC 20405-0002

Federal Recycling Program **O** Printed on Recycled Paper



EX   4

Page 1 of 4 pages

A. Appointment of Uniformed Special Policemen

1.  Appointment of Federal Protective Police Officer (FPPO's) Under 40 U.S.C. 318

    a. General:  The following requirements must be satisfied and certified by the Director, Federal Protective Service Division (FPSD), prior to the appointment of Federal Protective Police Officers under 40 U.S.C. 318:

    (1)  Must be a graduate of the Federal Law Enforcement Training Center (FLETC) basic police school or a former Federal Protective Service Police Academy, with no break in employment of longer than 3 *years with the* FPSD.

    (2)  In addition to the requirements outlined in paragraph (I) above, the individual must successfully complete the following training prior to appointment:

        *(a). The* 40-hour in-service training prescribed *for* the FPS police officers if the above training requirements were not met within the last 3 years.

        (b).  Qualified with approved firearm.

        (c).  Certified in CPR and First Aid.

        (d).  Certified in the use of Oleoresin Capsicum (OC) spray and baton.

        (e).  Physical standards.  All Federal Protective Police Officers must meet the physical and medical standards outlined in the Law Enforcement Operational Guidelines.

        (f).  Background review.  The employee must have a non-critical sensitive background investigation with favorable results.



b. <u>Recertification and maintenance.</u> To maintain the appointment, the Regional Director must recertify personnel every 3 years and maintain accurate records of completed training. To be recertified, personnel must:

      (1) Complete the 40-hour in-service FPPO training within the year of recertification.

      (2) Be qualified with approved firearm.

      **(3) Be certified in CPR and First Air.**

      (4) Be certified in the use of OC Spray and baton.

c. <u>Uniforms.</u> Police officers are required to wear the uniform specified in the Law Enforcement Operational *Guidelines*.

## 2. <u>Appointment of Personnel Other than FPPO's Under 40 U.S.C. 318</u>

a. General: The Regional Director, Federal Protective Service Division (FPSD), may appoint other FPSD personnel to meet emergency situation and other special law enforcement circumstances as deemed appropriate. The following requirements apply:

b. Training: The following training must be satisfied and certified by the Director, **Federal Protective Service Division, prior to appointing Federal Protective Service** personnel, other than FPPO s, under 40 U.S.C. 318.

      (1) Must be a graduate of the FLETC basic police school or a former Federal Protective Service Police Academy, with no break in employment of longer than 3 years with the FPSD.

      (2) In addition to the requirement outlined in paragraph (1), the individual must successfully complete the following training prior to appointment:

Employee must have no break in employment in the law enforcement field of longer than 3 years after graduating from training. Before appointment, the Assistant Commissioner, Office of Federal Protective Service, must approve the training based on a comparative analysis between the current FLETC basic police school curriculum and the alternative police school training completed. That analysis will be completed by the GSA/FPS Regional Office and forwarded by the Regional Director FPSD to the Assistant Commissioner for approval.



EX 7
Page 3 of 4 pages

If additional training is required to supplement the alternative police school training in order to satisfy FLETC police school standards, the Director will provide the Assistant Commissioner with a comparative analysis between *the* FLETC training and the proposed supplemental training.



EX 7
Page 4 of 4 pages

\

# **Richard Gong V. Michael Chertoff**

## **Civil No. 06-0125 (RWR)**

## **Exhibit 7**

PBS P 5930.17C

February 2000

# OFFICE OF FEDERAL PROTECTIVE SERVICE POLICY HANDBOOK



U.S. General Services Administration
Washington, DC 20405

PBS P 5930.17C

## CHAPTER 2. AUTHORITY, POLICE POWERS AND JURISDICTION

1. <u>Purpose</u>. This Chapter describes the authority, police powers and jurisdiction of FPS law enforcement and security personnel.

2. <u>Definitions</u>.

   a. <u>Jurisdiction</u>. Jurisdiction is defined as the physical or geographical area within which police power may be exercised, and outside of which police power may not be exercised by law enforcement and security personnel. Geographical boundaries are unique to each building or GSA property and must be defined in conjunction with GSA regional counsel offices.

   b. <u>Exclusive legislative jurisdiction</u>. Exclusive legislative jurisdiction is the term applied to areas over which the Federal Government has acquired all of the authority of the State, and in which the State concerned has not reserved to itself the right to exercise any of the authority concurrently with the Federal Government. However, the jurisdiction and policing powers of FPS personnel with 40 U.S.C. 318 authority on exclusive legislative jurisdiction property does not extend to the service of civil process. [Note: State and local Officers may still retain the authority to serve civil and criminal process in the exclusive Federal jurisdiction].

   c. <u>Concurrent legislative jurisdiction</u>. Concurrent legislative jurisdiction is a term applied to those areas wherein granting to the Federal Government authority which would otherwise amount to exclusive jurisdiction over an area, the State concerned has reserved to itself the right to exercise, concurrently with the Federal Government, all of the same authority.

   d. <u>Proprietorial interest only</u>. Proprietorial interest only is the term applied to those areas wherein the Federal Government has acquired some right or title to an area in a State, District or possession (i.e. through lease or purchase), but has not obtained any measure of the State's legislative jurisdiction over the area.

   e. <u>Partial</u>. Areas, wherein the Federal Government has been granted for exercise by it over an area in a State, certain of the State's authority, but where the State concerned has reserved to itself the right to exercise, by itself or concurrently with the United States, other authority constituting more than the right to serve civil or criminal process in the area (i.e. the right to tax private property).

   f. <u>The Administrator</u>. The Administrator of the General Services Administration.

1

2-1

g. <u>Law enforcement personnel</u>. For the purpose of this handbook, this term is used to refer to <u>all</u> FPS personnel possessing 40 U.S.C. 318 or 318d authority (to include Law Enforcement and Security Officers and Physical Security Specialists with 318d).

h. <u>Criminal Investigator (CI)</u>. These positions have primary jurisdiction within FPS for all investigatory matters. They are the lead entity in criminal intelligence gathering, anti-terrorist activities, and investigations within FPS. Among other duties, they conduct all major criminal investigations and coordinate the efforts of FPS employees in all others. Criminal Investigators are involved in planning and conducting investigations relating to alleged or suspected violations of criminal laws.

These individuals primarily require knowledge of investigative techniques. Knowledge of the laws of evidence; the rules of criminal procedure; court decisions concerning admissibility of evidence, constitutional rights, search and seizure and related issues are also required. They possess the ability to recognize, develop and present evidence that reconstructs events, sequences and time elements, as well as the ability to establish relationships, responsibilities, legal liabilities, and conflicts of interest, in a manner that meets requirements for presentation in various legal hearings and court proceedings. Criminal Investigators are skilled in applying the techniques required in performing such duties as maintaining surveillance, performing undercover work, and advising and assisting the U.S. Attorney in and out of court.

i. <u>Officer</u>. For the purposes of this handbook, the term Officer is used to refer to both FPS Police Officer and Law Enforcement and Security Officer, each defined below.

j. <u>FPS Police Officer</u>. The primary duties of this series are the performance or supervision of law enforcement work in preserving the peace; the prevention, detection, and investigation of crimes; the arrest or apprehension of violators; and assistance to citizens in emergency situations, including the protection of civil rights. The purpose of police work is to assure compliance with Federal, State, county and municipal laws and ordinances, and agency rules and regulations pertaining to law enforcement work. In coordination with the Law Enforcement and Security Officer and Physical Security Specialist, the Officer assists in monitoring contract guard services through on-site reviews of building specific post orders and contract guard compliance with those orders.

k. <u>Law Enforcement and Security Officer (LESO)</u>. LESO's are law enforcement and security professionals trained in both disciplines. LESO's prevent, detect, and investigate crimes; arrest or apprehend violators; assist citizens in emergency situations, including protection of civil rights; perform physical security and risk assessments; identify appropriate security countermeasures for identified risks; provide security advisory services to customer agencies, delivering crime prevention services to tenants, and

evaluating the effectiveness of protection services. In coordination with the Physical Security Specialist and FPS Police Officer, the LESO monitors contract guard services through on-site reviews of building specific post orders and contract guard compliance with those orders. While LESO's perform both law enforcement and physical security duties in the FPS Police Officer uniform, they may perform physical security and related duties in the physical security uniform while armed.

l. <u>Physical Security Specialist (PSS)</u>. Physical Security Specialists are trained and accredited by the FPS as professionals to accomplish a wide range of security program activities, including performing physical security and risk assessments. They are also responsible for identifying appropriate security countermeasures for identified risks, providing security advisory services to customer agencies, delivering crime prevention services to tenants, and evaluating the effectiveness of protection services. In relation to the Building Security Committee, the PSS must provide the leadership of the review process and ultimately have responsibility for the assessment process. In coordination with the LESO and FPS Police Officer, the PSS assists in monitoring contract guard services through on-site reviews of building specific post orders and contract guard compliance with those orders.

m. <u>Customer Oriented Protection (COP)</u>. This concept focuses on initiating and maintaining "constant-contact" with our FPS customers before they have a public safety related problem. Ensuring that our FPS customers, internally and externally, know who comprises the FPS, what to do in our absence, and who to call when needed. We believe that this is a proactive approach to providing interactive quality service to our customers. Additionally it provides means for improving supervision and coaching to FPS personnel.

3. <u>Legislative authority</u>. The law enforcement authority of FPS personnel is derived from 40 U.S.C. 318 and 318d. FPS employees possessing 318 and 318d authority may enforce all Federal laws and GSA rules and regulations, including those pursuant to 41 CFR, except the power to serve civil processes in areas under GSA charge and control.

4. <u>Jurisdiction</u>.

a. <u>General</u>.

(1) Under the provisions of 40 U.S.C. 318 and 318d, those persons identified under paragraph 2g may exercise their police powers in all areas under the charge, control and jurisdiction of GSA.

(2)  Under the provisions of the Annual Treasury, Postal Service, and General Government Appropriations Act, Public Building Amendments of 1988, Public Law 101-678, 102 Statute 4049 (1988), the authority of those persons possessing 40 U.S.C. 318 or 318d authority has been extended to all areas owned or occupied (including leased property) by the United States and under the charge and control of the Administrator, including those areas where the Federal Government has a proprietorial interest only. [Note:  Under the guidelines of 40 U.S.C. 318b, Officers of the FPS may also be detailed to protect the property of other Departments or Agencies.  See 40 U.S.C. 318b].

(3) Law enforcement personnel assigned as Physical Security Specialists (PSS) (only if they have been appointed under 40 U.S.C. 318), may exercise police authority under 40 U.S.C. 318, when wearing the uniform prescribed in Chapter 22.

(4) If the jurisdictional status of a facility is in question, the Regional Counsel must be contacted and consulted to determine the facility status or resolve the jurisdictional issue.

b.  Non-uniformed assignment.  Plainclothes or undercover assignments will be primarily performed by Criminal Investigators.  FPS Police Officers, LESO's, and PSS, may at times be detailed and granted this authority by the Central Office under 40 U.S.C. 318d in compliance with paragraph 6 of this Chapter.  The authority of non-uniformed FPS personnel extends off of GSA property if the underlying crime was committed on GSA property.  (See 4.a.(2) of this Chapter above).

5.  Authority.

a.  Those persons possessing 40 U.S.C. 318 or 318d authority may exercise all of the police powers, except the power to serve civil processes, exercised by sheriffs and constables to enforce applicable Federal law or GSA rules and regulations while on property under the jurisdiction of GSA.  This includes the power to make arrests. They may make an arrest on GSA controlled property, without warrant, when the following acts are committed or such crimes are in progress:

(1)  A felony committed in their presence;

(2)  A felony when there is probable cause to believe a felony has been committed and the person to be arrested committed the felony;

(3)  A misdemeanor in violation of Federal law committed in the presence or within view of authorized law enforcement personnel, provided the arrest is made immediately;

4

(4) A misdemeanor violation of GSA rules and regulations committed in the presence of authorized law enforcement personnel, provided the rules and regulations are clearly posted in the building or facility.

(5) A violation of the laws of a State, District, territory or possession, in which the GSA-controlled property is located, and the Federal jurisdiction is exclusive or concurrent. Under the Laws of States adopted for areas within Federal jurisdiction, 18 U.S.C. 13 (also known as the Assimilative Crimes Act), the violation is considered to be a Federal violation, and subject to the jurisdiction of the GSA.

(6) A GSA Notice of Violation may be issued in lieu of arrest for misdemeanor violations of GSA rules and regulations provided subject has proper identification and National Crime Information Center (NCIC) reveals no outstanding wants or warrants.

a. Persons possessing 40 U.S.C. 318 or 318d authority must not make an arrest when a misdemeanor is allegedly committed but does not take place in their presence. They must complete GSA Form 3155, Offense/Incident Report, and refer the victim of the alleged offense to the appropriate judicial authority to initiate a criminal complaint.

b. Authorized law enforcement personnel may pursue (hot pursuit) and arrest any individual who has committed a felony or serious misdemeanor and has fled property under the jurisdiction of GSA. This pursuit must be continuous and in a manner prescribed by and consistent with the applicable State law and Chapter 16, Part 3, of this handbook. The relative seriousness of the offense must be considered before pursuit occurs since the pursuit may in itself create a major hazard to the safety of others.

6. **Appointments.**

a. **Appointment of Criminal Investigators as Non-Uniformed Special Police.** The Administrator has delegated to the PBS Commissioner and to the Inspector General, the authority to appoint FPS Police Officers, Law Enforcement and Security Officers, and employees having investigative functions as non-uniformed special policemen under 40 U.S.C. 318d and authority to administer oaths under 40 U.S.C. 486(i). The PBS Commissioner has delegated this authority to the FPS Assistant Commissioner. In accordance with this delegation, all regional requests for non-uniformed special police authority (40 U.S.C. 318d) and authority to administer oaths (40 U.S.C. 486(i)) must be forwarded by memorandum with a justification to the FPS Central Office for approval. The applicable training and/or training recertification requirements outlined in paragraphs 6(f) and 6(g) below must be satisfied and certified by the FPS Regional Director prior to this appointment.

PBS P 5930.17C

**b. Appointment of Personnel other than Criminal Investigators as Non-Uniformed Special Policemen under 40 U.S.C. 318d.** The FPS Assistant Commissioner is authorized to appoint regional FPS personnel other than Criminal Investigators as Non-Uniformed Special Policemen under 40 U.S.C. 318d (318d authority). Appointment will be based on operational need and proper documentation of training and experience qualifications provided by the requesting FPS Regional Director. The applicable training and/or training recertification requirements outlined in paragraphs 6(f) and 6(g) below must be satisfied and certified by the FPS Regional Director prior to this appointment.

**c. Temporary Appointments of Personnel as Non-Uniformed Special Policemen under 40 U.S.C. 318d (318d authority).** The FPS Assistant Commissioner is authorized to appoint persons as temporary, non-uniformed special policemen and grant them 318d authority for the duration of the appointment. The duration of such appointments will not exceed 120 days. The applicable training and/or training recertification requirements outlined in paragraphs 6(f) and 6(g) below must be satisfied and certified by the FPS Regional Director prior to this appointment.

**d. Appointment of FPS Police Officers and Law Enforcement and Security Officers under 40 U.S.C. 318.** The applicable training and/or training recertification requirements outlined in paragraphs 6(f) and 6(g) below must be satisfied and certified by the FPS Regional Director prior to the appointment of FPS Police Officers and LESO's under 40 U.S.C. 318.

**e. Appointment of Personnel Other than FPS Police Officers and LESO's under 40 U.S.C. 318.** With approval of the FPS Assistant Commissioner, the FPS Regional Director may appoint other FPS personnel to meet emergency situations and other special law enforcement circumstances as deemed appropriate. The applicable training and/or training recertification requirements outlined in paragraphs 6(f) and 6(g) below must be satisfied and certified by the FPS Regional Director prior to this appointment. Personnel other than FPS Police Officers and LESO's must possess one year of police experience as an FPS Police Officer, LESO, or a police officer/law enforcement officer with a local, State or Federal agency.

PBS P 5930.17C

f. Training Requirements for Appointments under 6(a) through 6(e) listed above. Prior to making any appointments in 6(a)-6(e) above, the following training must be satisfied and certified by the FPS Regional Director. Completion of this training must meet the timeframes listed in Chapter 4 of this Handbook. The items in the chart below that are footnoted include additional requirements that are explained on the next page in this Chapter.

| [TRAINING] | Appointment of Criminal Investigator as NonUniformed Special Police | Appointment of Personnel Other than Criminal Investigator as NonUniformed Special Police | Temporary Appointment of Personnel as NonUniformed Special Policemen under 40 U.S.C. 318d | Appointment of FPS Police Officers and LESO under 40 U.S.C. 318 | Appointment of Personnel Other than FPS Police Officers and LESO under 40 U.S.C. 318 |
|---|---|---|---|---|---|
| Complete FLETC Criminal Investigators School | X | X | X | | |
| Complete FLETC Legal Review Course | X | X (see footnote 1) | X (see footnote 1) | | |
| Must be graduate of FLETC Basic Police School or former FPS Police Academy. Employees must have no break in employment in the law enforcement field of longer than 3 years. | | | | X | X |
| Complete the in-service training prescribed for the FPS Police Officer and LESO, if training in above paragraph was not met within the last 3 years. | | | | | X (see footnote 2) |
| Qualified with the FPS approved firearm. | X | X | X | X | X |
| Certified in CPR and First Aid. | X | X | X | X | X |
| Certified in the use of Oleoresin spray and baton. | X | X | X | X | X |
| Meet current medical standards for FPS law enforcement occupation. Results of assessment must accompany appointment request. | X | X | X | X | X |
| Successfully complete FPS psychological screening. | X | X | X | X | X |
| Employee position description must reference non-uniformed police duties and responsibilities. | | X | X | | |
| Background investigation | See Footnote 3 | See Footnote 3 | See Footnote 3 | See Footnote 3 | See Footnote 3 |

| with favorable results | | | | | |
|---|---|---|---|---|---|

**Footnote References for 6(f) Chart - Training Requirements for Appointments 6(a)-6(e).**

(**Footnote 1**) - If the requirements of FLETC Criminal Investigator School were not met within the last 3 years.

(**Footnote 2**) - In addition, Personnel other than FPS Police Officers and LESO's under 40 U.S.C. 318, must have no break in employment in the law enforcement field of longer than 3 years after graduating from training. Prior to appointment, the FPS Assistant Commissioner must approve the training based on a comparative analysis between the current FLETC basic police school curriculum and the completed alternative police school training. The analysis will be completed by the FPS regional office and sent by the FPS Regional Director to the Assistant Commissioner for approval. If additional training is required to supplement the alternative police school training in order to satisfy FLETC police school standards, the FPS Regional Director will provide the Assistant Commissioner with a comparative analysis between the FLETC training and the proposed supplemental training.

(**Footnote 3**) - <u>Background investigation level for all FPS personnel appointed or hired in positions requiring 318 and 318d authority</u>. All FPS Police Officers, Physical Security Specialists (PSS) requiring 318 authority, and Law Enforcement and Security Officers must successfully complete, <u>at a minimum</u>, a Limited Background Investigation (LBI), resulting in a <u>Certification of Public Trust at the Moderate Risk</u>. Incumbents must also undergo and successfully complete a <u>Periodic Reinvestigation (PRI)</u> every 5 years thereafter. All FPS Criminal Investigators, 1811 series with 318 authority, must successfully complete, at a minimum, a Background Investigation (BI), resulting in a <u>Certification for Public Trust position at the High Risk</u>. Every 5 years thereafter, the employee must have a PRI completed on them.

g. <u>Training Recertification Requirements for Appointments under 6(a) – 6(e).</u>
The FPS Regional Director must request the FPS Assistant Commissioner recertify personnel every 3 years. To be certified, personnel must accomplish the training recertification requirements outlined in the chart below within the timeframes in Chapter 4 of this Handbook. See footnoted section under chart for additional requirements.

| [TRAINING] | Appointment of Criminal Investigator as NonUniformed Special Police | Appointment of Personnel Other than Criminal Investigator as NonUniformed Special Police | Temporary Appointment of Personnel as NonUniformed Special Policemen under 40 U.S.C. 318d | Appointment of FPS Police Officers and LESO under 40 U.S.C. 318 | Appointment of Personnel Other than FPS Police Officers and LESO under 40 U.S.C. 318 |
|---|---|---|---|---|---|
| Complete FLETC Legal Review Course | X (see footnote 1) | X (see footnote 1) | X (see footnote 1) | | |
| Complete the in-service FPS Police Officer and LESO training within the year of recertification. | | | | | |
| Qualified with the FPS approved firearm. | | | | X | X |
| Certified in CPR and First Aid. | X | X | X | X | X |
| Certified in the use of Oleoresin spray and baton. | X | X | X | X | X |

**(Footnote 1)** - Regional Directors must ensure the Regional Training Officer routinely schedules groups to attend this training to control number of employees requiring FLETC training at one time and ensure meeting timeframes.

\

# **Richard Gong V. Michael Chertoff**

# **Civil No. 06-0125 (RWR)**

# **Exhibit 8**

8.  Inquiry

    a.    Review of Records (Indicate name of records reviewed and the date of each review):

Aggrieved Person provided on September 22, 2004, a regulation from the GSA website entitled "Authority, Police Powers and Jurisdiction," which describes under subpart 6d the training required for FPS police officers and Law Enforcement Security Officers. (Attachment #3) The document said that a candidate must "complete the in-service training prescribed ..., if training was not met within the last 3 years." Subpart 14d describes "Exceptions to attendance requirements" as "made on a case-by-case basic when the employee has successfully completed a basic police program given by another agency."

Gary Beard provided a Memorandum for Regional Administrators, dated October 3, 1998, which said under section A.1. that Federal Protective Pollee (sic) Officers "must be a graduate of the Federal Law Enforcement Training Center basic police school or a former Federal Protective Service Police Academy, with no break in employment of longer than 3 years with the FPSD." (Attachment #4)  Mr. Beard further proved the job announcement #0430272 that gave similar requirements. (Attachment #5)

    b.    Personal Interviews: (Include date, name, title, organizational position, matter(s) discussed):

**Gary Beard (Caucasian/Filipino, U.S./Philippines)**, Director of Federal Protective Service National Training Academy, GS-14-1811, DHS, Federal Protective Service, ICE, Townhouse 377A, Glynco, Georgia 31524
Gary.beard@dhs.gov, 912-267-2831

On September 8, 2004, the EEO Counselor spoke with Gary Beard, who said he is aware of Aggrieved Person's race and national origin, but denies any discrimination. He said the problem is that this is a policy and guidance issue whereby they have no definitive policy relating to how they train people with prior law enforcement experience. He is trying to get Headquarters in Washington D.C. to give him a definitive policy.  He said Kenneth Ehinger is the person in Washington D.C. who is making this decision. He said the policy they currently have requires anyone who has not gone through the mixed basic police training in the past three years of starting working for the agency to attend again. He said to his knowledge the Aggrieved Person attended some basic police academies. He said there is a post-basic (or refresher) training program that is three weeks long.

Mr. Beard said it was not his decision to put Aggrieved Person through the training. He said Edward DeCoste, the Director for Aggrieved Person's office, is the person who probably required Aggrieved Person to attend.

\

# Richard Gong V. Michael Chertoff

## Civil No. 06-0125 (RWR)

## Exhibit 9

U.S. Department of Homeland Security
1800 F Street, NW
Suite 2341
Washington, DC 20405



**U.S. Immigration and Customs Enforcement**

OCT 2 8 2004

## FEDERAL PROTECTIVE SERVICE POLICY DIRECTIVE FPS-04-012

MEMORANDUM FOR:    **REGIONAL DIRECTORS**

FROM:    **WENDELL C. SHINGLER**
         **DIRECTOR**

SUBJECT:    Advanced Law Enforcement Refresher Training Program

This policy directive shall be implemented nationwide upon signature.

### Purpose

To establish the Advanced Law Enforcement Refresher Training (ALERT) program as a mandatory training requirement, replacing the Professional Development Training program. This training will be approved and conducted at Federal Law Enforcement Training Center (FLETC) managed facilities.

### Action

The FPS Policy Handbook, Chapter 4, Part 3, FLETC Training, is now supplemented with the following policy section related to the ALERT program. This ALERT program policy follows Paragraph 17 (Criminal Investigations Program) under Chapter 4, Part 3.

A. **Purpose.** The ALERT program is a mandatory, continuing, career-development curriculum for all Federal Protective Service (FPS) law enforcement personnel. This program curriculum was designed by the FPS National Training Academy with the assistance of FLETC staff and will be conducted at FLETC managed facilities. The ALERT program provides FPS law enforcement personnel with not only a review of basic law enforcement skills, but also an additional level of advanced education and training to expand their knowledge and skills.

B. **Requirements.**

1. After initial FLETC basic training, all FPS law enforcement personnel must complete the ALERT program, on a recurring basis, once every 5 years.

2. All FPS law enforcement personnel must meet the minimum health-screening criterion to attend the ALERT program. This health-screening criterion is established by the FLETC and must be met by each attendee in order to allow them to participate in the firearms and driver training and practical and lab exercises contained within the ALERT program. The FLETC health unit will conduct this formal-health screening on the initial day of the program.

Subject: Advanced Law Enforcement Training Program (FPS-04-012)
Page 2

3.  The preliminary-health screening of scheduled students will be coordinated by the
FPS Regional Director, or their designee, using the attached FLETC Health
Questionnaire Form FTC-OTS-5 (Revised April 2000).

The purpose of the preliminary-health screening is to identify any temporary
illnesses or physical disabilities that would prevent participation in the training
activities at FLETC and to avoid travel expenditures for students unable to fully
participate. Those unable to participate due to temporary illnesses or physical
disabilities, identified during the preliminary screening, will be rescheduled by the
Regional Training Officer for a later class within the mandatory 5-year cycle. It is
the responsibility of the FPS regional office to provide a substitute for any student
that is cancelled from the class for health reasons.

C. Scheduling. The Division Director of Training and Development at FPS Headquarters (HQ),
assigned to FLETC, will develop the annual class schedule and provide it to the FPS Regional
Director for selection of student candidates. The FPS Regional Director should generally prioritize
attendance according to the length of time since completing basic training or prior refresher training
at FLETC. Those law enforcement personnel who are least current, in terms of attendance, should
be given priority. While all law enforcement personnel must attend the ALERT program every 5
years, an additional scheduling consideration may be included whether or not the individual is
involved in daily law enforcement street duties. All training candidates must meet the established
health-screening criterion.

D. Exceptions. None.

E. Evaluation criterion. The ALERT program is designed as a career-enhancement opportunity.
There is no pass/fail criterion for this program. Student performance will be measured by a
comprehensive diagnostic examination. A performance evaluation of each student will be provided
to the FPS Regional Director. The student will also receive a copy of their evaluation. The
evaluation will identify individual strengths and areas that require remedial training. The areas
identified for remedial training must be incorporated into the regional, annual in-service, training
program of the student for resolution. The FPS Regional Director is responsible for maintaining a
record of the remedial training and for reporting completion of the training to the Division Director
of Training and Development at the FPS HQ.

F. Record keeping. Each FPS Region will be the primary repository for program records related to
the ALERT program. The Division Director of Training and Development at the FPS HQ, assigned
to the FLETC, will maintain a copy of all program records and provide original certification of
completion and student evaluations to the FPS Regional Director for inclusion in the individual
training records. This policy applies to all FPS law enforcement personnel authorized to enforce
laws under 40 U.S.C. 1315.

Please contact the Training and Development Division at FLETC with any questions relative to this
policy directive.

Attachment

\

# Richard Gong V. Michael Chertoff

## Civil No. 06-0125 (RWR)

## Exhibit 10

## AFFIDAVIT

District of Columbia:

I, Kenneth Ebinger, Deputy Director, Mission Support, of full age, hereby certify as follows:

I am the Deputy Director of Mission Support for the Federal Protective Service (FPS), Immigration and Customs Enforcement, Department of Homeland Security, Washington, DC;

I am aware that several individuals have been required to take the FPS Mixed Basic Police Training Program since they have been away from a law enforcement position for more than three years. I personally have sent several individuals to this course as a result of their failure to meet the three-year requirement for a waiver;

It is my understanding that Mr. Gong claims two individuals were not required to meet this requirement and were provided a waiver: Ellis Andrews and Leigh Ann Hackney. Mr. Gong is misplaced in this assertion. First, it should be noted that Mr. Andrews was placed different than Mr. Gong since he is in a supervisor position and does not have to meet the requirements of Mr. Gong's position. Second, Mr. Andrews had successfully completed the FLETC Police Training Program and continued to work in the law enforcement field for the Department of Defense prior to him entering on duty with the Agency. Furthermore, Mr. Andrews was still required to attend and graduate from the FPS Professional Development and Training Course;

Regarding Ms. Hackney, according to her unofficial personnel file, she resigned from the Bureau of Alcohol, Tobacco, Firearms and Explosives from a law enforcement position on September 25, 2000. On February 25, 2003, Ms. Hackney received a reappointment with the Agency. Obviously, this is well within the three-year limitation;

Mr. Gong is required to take the class as a result of being out of law enforcement for more than three years. I am not aware of any individual who has been provided a waiver where the person has been out of law enforcement for more than three years.

I hereby certify that the information provided is accurate and to the best of my knowledge.

Date _8/9/05_

Kenneth Ehinger
Deputy Director,
Mission Support

Signature Witnessed before me on
This _9TH_ day of _AUGUST_, 2005.

\

# **<u>Richard Gong V. Michael Chertoff</u>**

## **Civil No. 06-0125 (RWR)**

## **Exhibit 11**



# VA Healthcare Network Upstate New York

U.S. DEPARTMENT OF VETERANS AFFAIRS — VETERANS INTEGRATED SERVICE NETWORK 2

Leading Health Care in the 21st Century



HOME  SITEMAP  NEW  CONTACT

SEARCH

August 26, 2006

**Home**

**Network**

**Facilities**

► **Care Lines & Support Services**

**Veteran Services**

**Employee Services**

**Leading & Innovating**

**News**

**QuickNav**

**Search**

**What's New**

**Privacy & Accessibility**



**VA POLICE SERVICE**

HOME

SERVICES

INCIDENT REPORTING

PARKING

VEHICLE REGISTRATION

OFFENSES

HISTORY

## History

As the Veterans Administration was established in 1930, VA Police began as the "VA Protective Service," assigned the role of maintaining order, protecting persons and property, and providing fire safety services. As the VA evolved the fire safety role was turned over to Engineering Service and the "Protective Service" became a security guard force.

In 1973, by an Act of Congress and Presidential signature the guard force was abolished and the VA Police were established. This evolution was brought about due to the changing needs of the VA and an increase of police related matters that could not be handled by a guard force or community law enforcement agencies.

All VA Police applicants must have a minimum of two years law enforcement experience with arrest authority (obtained through Federal, State, County, Municipal Police experience or through service as a Military Police Officer), or have an Associate's or Bachelor's Degree in Criminal Justice. Applicants must also undergo an extensive physical examination, psychological evaluation and background investigation.

Upon selection VA Police Officers go through an intensive five-week training course at the Law Enforcement Training Center located at the North Little Rock VAMC in Arkansas. Additionally, VA Police Officers receive continuous in-service and specialized training. VA Police Officers are certified in CPR (as First Responders), use of Chemical Irritant Projector (O.C. spray), PR-24 Police side handle baton, and the Beretta 9 mm firearm.

**Links**
VA Office of Security & Law Enforcement
VA Handbook 0730: Security and Law Enforcement

◄ VA Police Home



VISN 2 Home | Search | QuickNavigate | Site Map | Plug-Ins | What's New
VA Home | Privacy & Security | Accessibility | Subscribe | Contact Us

Updated
29 Jun 2006

\

## <u>Richard Gong V. Michael Chertoff</u>

## Civil No. 06-0125 (RWR)

## Exhibit 12



**FLETC Headquarters Building**
Glynco, Georgia

Federal Law Enforcement Training Center

# Catalog of
# Training Programs
# 2005 - 2006



Homeland
Security

**Program Title: MARINE PATROL OFFICERS COURSE (USCGMPOC)**

Program Description: This program is designed to prepare boating safety professionals to instruct fellow law enforcement officers and the public in boating safety. Also, standardize training in the maritime law enforcement arena in response to the boating public while ensuring educational efficacy in the delivery process.

General topic areas include: Educational methodologies, Field skills, Knowledge of federal regulations

Specific topic areas include: Boating Under the Influence (BUI), Boarding Procedures, Tactical Procedures, Navigation Rules, Officer Water Survival Techniques, Boating Accident Response, Stolen Boat Identification

Length of training: 10 class days

Prerequisites for Attendance:  Sworn law enforcement officer assigned to marine patrol duties

**Program Title:  MARITIME LAW ENFORCEMENT BOARDING TEAM MEMBER
              COURSE (USCGBTM)**

Program Description: This program is designed to prepare Coast Guard personnel to fill the role as a member of a law enforcement boarding team. The target audience is enlisted personnel of pay grades E-2 to E-5 and junior officers with little or no law enforcement experience that are assigned to units having a law enforcement mission.

General topic areas include: Defensive Tactics Techniques, Tactical Procedures

Specific topic areas include: Basic Boarding Procedures, Administrative Inspections, an overview of Coast Guard Authority and Jurisdiction, Coast Guard Use of Force, Personnel Searches

Length of training: 10 class days

Prerequisites for Attendance:

1. Personal Qualification Standard (PQS) 1-01, Physical Fitness Requirements for Boarding Officer/Boarding Team Member
2. Trainee must have 18months remaining at unit or have orders to a unit with law enforcement mission.
3. Trainee must be evaluated by his command and certified as possessing the maturity and judgment necessary to perform law enforcement duties

**Program Title:  MIXED BASIC POLICE TRAINING PROGRAM (MBPTP)**

Program Description:  This program provides training in the basic law enforcement knowledge, skills and abilities that a new Federal officer must understand and/or be able to perform in the first two years on the job. Officers receive instruction in a number of areas, including:  Officer Safety and Survival, Communications and Interviewing, Criminal Law, Detention and Arrest, Narcotics, Dynamics of Terrorism, VIP Protection, Physical Security, Firearms, Physical Techniques, and Driver Training.

Length of Training: 50 class days

Prerequisites for Attendance: Each Partner Organization sets its standards in recruiting new employees. After the individuals have been selected, they are sent by that organization to the FLETC. Attendees must meet their Agency's recruitment standards and FLETC's Practical Exercise Performance Requirements for the MBPTP <u>PRIOR TO ARRIVING FOR THE TRAINING PROGRAM</u>.

**Program Title:    NATIONAL PARK RANGER INTEGRATED TRAINING PROGRAM (NPRI)**

Program Description: This program provides training in the knowledge, skills and abilities required for National Park Service law enforcement rangers to efficiently and effectively fulfill their assignments and functions in national parks throughout the United States. Students receive training from the FLETC and the NPS staff. Courses include: Crowd Control, Patrol Procedures, Criminal Law, Report Writing, Hostage Situations, Communications, Stress, Narcotics, Officer Safety and Survival, Firearms, Driver, and Physical Training.

Length of Training: 85 class days

Prerequisites for Attendance: The NPS sets its standards in recruiting new employees. After the individuals have been selected, they are sent by the NPS to FLETC for training. Attendees must meet the NPS recruitment standards and FLETC's Practical Exercise Performance Requirements for the NPRI <u>PRIOR TO ARRIVING FOR THE TRAINING PROGRAM</u>.

**Program Title: NATURAL RESOURCES POLICE TRAINING (NRPT)**

Program Description: This program provides entry-level training for Federal land management law enforcement rangers who are assigned to patrol duties in urban, rural or isolated areas. Agencies include the: U.S. Forest Service, U.S. Fish and Wildlife Service, Tennessee Valley Authority, National Marine Fisheries Service and Bureau of Land Management.

Lectures, laboratory experiences, and practical exercises are oriented toward law enforcement rangers who work in a land management environment. Subjects include: Interviewing and Communications, Officer Safety and Survival, Constitutional Law, Civil Rights, Firearms, Physical Techniques, Driving, Rural Surveillance, Drug Investigations, Natural Resource Violations, and other basic law enforcement subjects. Personnel attending this program are employed primarily as cultural and natural resource protectors with law enforcement responsibilities and authority. Training is provided by FLETC staff personnel and instructors detailed from various land management Partner Organizations.
Length of Training: 81 class days

Prerequisites for Attendance: Each Partner Organization sets its standards in recruiting employees. After the individuals have been selected, they are sent by that organization to the FLETC. Students must be certified in Cardiopulmonary Resuscitation (CPR) by either the American Heart Association or the American Red Cross PRIOR to being enrolled at FLETC. Attendees must meet their Agency's recruitment standards and FLETC's Practical Exercise Performance Requirements for the NRPT <u>PRIOR TO ARRIVING FOR THE TRAINING PROGRAM</u>.

**Program Title: PRACTICAL EXERCISE EVALUATORS TRAINING PROGRAM (PEETP)**

Program Description: The PEETP is designed to prepare the instructor with necessary information to be an effective and informed evaluator. The PEETP incorporates many of the instructional methodologies including discussions, demonstrations, lectures, role playing and practical exercises.

# SCHEDULE 8PT-915 (8 WEEKS)

## SEPTEMBER 7 - NOVEMBER 2, 1989



# POLICE TRAINING

**FEDERAL LAW ENFORCEMENT TRAINING CENTER**
**GLYNCO, GEORGIA**



**FEDERAL LAW ENFORCEMENT TRAINING CENTER**
**POLICE TRAINING**

Glynco, GA 31524
Flatc

FACILITY ADVISOR: ROD LANE   T-15
EDUCATIONAL AIDE: EVELYN COLEMAN

CLASS NO.: 8PT-915

BLDG.NO: 262
ROOM NO: N-3
WEEK NO: 1

AGENCY: MIXED

| HOURS | MON | TUE | WED | THU 9/7 (1) | FRI 9/8 (2) |
|---|---|---|---|---|---|
| 7:30 | | 7a - 5p (912) 267 - 2456 5P - 7a (712) 267.2100 | Rod Lane Assistant Chief Enforcement Technique 305 Kaiser Circle (912) 267 - 2633 (office) (912) 264 - 0158/(Pager) | | 5085 RADIO COMMUNICATIONS RON FRAZIER |
| 8:30 | | | | WELCOME AND ORIENTATION TO FLETC MR. LANE | |
| 8:30 | | | | | |
| 9:30 | | | | | EC |
| 9:30 | | | Mike Arnzield Program Specialist Facility Advisor (912) 267-2815 (office) | 9130 HEALTH SCREENING AND UNIFORM MEASURE LIBRARY, BUILDING 262 | GROUP A 5085 RADIO COM LAB EOD | GROUP B FACILITY ADVISOR |
| 10:30 | | | | | |
| 10:30 | | | | 4002 Ron Wood ORIENTATION AND DANCE TO BEHAVIORAL SCIENCE | 5085 RADIO COM LAB |
| 11:30 | | | | BSD | FACILITY ADVISOR |
| 11:30-12:30 LUNCH | | | | BSD | EC |
| 12:30 | | | | 6000 Harry Tully INTRODUCTION TO fx 2675 FIREARMS THEORY AND TECHNIQUES | GROUP A FAD 221 |
| 1:30 | | | | | GROUP B PTD |
| 1:30 | | | | | 1+2 |
| 2:30 | | | | BLDG: 262   ROOM: N-3 FAD | |
| 2:30 | | | | 8100 Charles Moore INTRODUCTION TO PHYSICAL TECHNIQUES PTD / OST | 5070 DSH (completed) ORIENTATION TO FEDERAL LAW ENFORCEMENT AGENCIES GFLEA |
| 3:30 | | | | | |
| 3:30 | | | | BLDG: 262   ROOM: N-3 BD 252 RM 105 | |
| 4:30 | | | | fx 3090   PTD | EC |
| AFTER HOURS | | | | 4:30 UNIFORM ISSUE BUILDING 28 MEET N-3 | |

# FEDERAL LAW ENFORCEMENT TRAINING CENTER
## POLICE TRAINING

FACILITY ADVISOR: ROD LANE
EDUCATIONAL AIDE: EVELYN COLEMAN

CLASS NO.: 8PT-915          AGENCY: MIXED

BLDG.NO: 262
ROOM NO: N-3
WEEK NO: 2

| HOURS | MON 9/11 (3) | TUE 9/12 (4) | WED 9/13 (5) | THU 9/14 (6) | FRI 9/15 (7) |
|---|---|---|---|---|---|
| 7:30 | 4038 ETHICAL BEHAVIOR (1) | 4038 ETHICAL BEHAVIOR (2) | 4036 COMMUNICATIONS/ INTERVIEWING (2) | 4036 COMMUNICATIONS/ INTERVIEWING (3) | 4039 CONFLICT MEDIATION (2) |
| 8:30 | | | | | |
| 8:30 | | BSD | | | |
| 9:30 | | 4036 COMMUNICATIONS/ INTERVIEWING (1) | | | |
| 9:30 | | | | | |
| 10:30 | | | | | |
| 10:30 | | | | | |
| 11:30 | BSD | BSD | BSD | BSD | BSD |
| 11:30–12:30 LUNCH | | | | | |
| 12:30 | GROUP A PTD / GROUP B FAD — 1080 CONSTITUTIONAL LAW (1) | GROUP A FAD / GROUP B PTD — 1080 CONSTITUTIONAL LAW (2) | GROUP A PTD / GROUP B FAD — 1040 CIVIL RIGHTS | GROUP A FAD / GROUP B PTD — 4039 CONFLICT MEDIATION (1) | GROUP A PTD / GROUP B FAD — 4013 HANDLING ABNORMALS |
| 1:30 | | | | | |
| 1:30 | | | | | |
| 2:30 | | | | | |
| 2:30 | WALT KOGAN | | | | |
| 3:30 | KEGA1 | | | | |
| 3:30 | | | | | |
| 4:30 | LGD | LGD | LGD | BSD | BSD |
| AFTER HOURS | | | | | |

**FEDERAL LAW ENFORCEMENT TRAINING CENTER**
**POLICE TRAINING**

DUTY ADVISOR: ROD LANE
EDUCATIONAL AIDE: BARBARA SULLIVAN

CLASS NO.: SPT-915       AGENCY: MIXED

BLDG.NO: 262
ROOM NO: N-3
WEEK NO: 4

| HOURS | MON 9/25 (13) | TUE 9/26 (13) | WED 9/27 (14) | THU 9/28 (15) | FRI 9/29 (16) | (17) |
|---|---|---|---|---|---|---|
| 7:30 | 4007 STRESS | 4007 STRESS | 4007 STRESS | 4040 VICTIMOLOGY | 4040 VICTIMOLOGY | |
| 8:30 | | | | | | |
| 8:30 | | | | | | |
| 9:30 | BSD | BSD | BSD | BSD | BSD | |
| 9:30 | 1090 CRIMINAL LAW (1) | 1090 CRIMINAL LAW (2) | 1090 CRIMINAL LAW (3) | 1090 CRIMINAL LAW (4) | 1090 CRIMINAL LAW (5) | |
| 10:30 | | | | | | |
| 10:30 | | | | | | |
| 11:30 | LGD | LGD | LGD | LGD | LGD | |
| 11:30–12:30 LUNCH | | | | | | |
| 12:30 | GROUP A FAD / GROUP B 7003 7004 7005 HRD DD SC | GROUP A 7003 7004 7005 HRD DD SC / GROUP B FAD | GROUP B FAD / GROUP A FAD | GROUP A 7003 7004 7005 HRD DD SC / GROUP B FAD | GROUP A FAD / GROUP B 7003 7004 7005 HRD DD SC | |
| 1:30 | | | | | | |
| 1:30 | | | | | | |
| 2:30 | | | | | | |
| 2:30 | GROUP A PTD | DMD | GROUP B PTD / GROUP A PTD | PRACTICAL EXERCISES / GROUP B PTD | GROUP A PTD / PRACTICAL EXERCISES | |
| 3:30 | | | | | | |
| 3:30 | | | | | | |
| 4:30 | DMD | | DMD | DMD | DMD | |
| AFTER HOURS | | | | | | |

# FEDERAL LAW ENFORCEMENT TRAINING CENTER
## POLICE TRAINING

FACULTY ADVISOR: ROD LANE  
EDUCATIONAL AIDE: BARBARA SULLIVAN

CLASS NO.: 8PT-915  AGENCY: MIXED

BLDG. NO: 262  
ROOM NO: N-3  
WEEK NO: 5

| HOURS | MON 10/2 (18) | TUE 10/3 (18) | WED 10/4 (19) (20) | THU 10/5 (21) | FRI 10/6 (22) |
|---|---|---|---|---|---|
| 7:30 | 2515 OFFICER SAFETY AND SURVIVAL (OSS) INTRODUCTION | 2518 OSS TACTICS I | EXAM II MR. LANE | 5155 VIP PROTECTION | 2002 CRIME SCENE INVESTIGATION (2) |
| 8:30 | | | | | |
| 8:30 | | | | | |
| 9:30 | FID | FID | FID EXAM REVIEW – 15 MIN. | | FID |
| 9:30 | 7011 VEHICLE STOPS | 2519 OSS TACTICS II | 1120 EVIDENCE (1) | 2002 CRIME SCENE INVESTIGATION (1) | |
| 10:30 | | | | | |
| 10:30 | BLDG: 210 ROOM: E-2 | | | | |
| 11:30 | DMD | DMD | FID | LGD | FID |
| 11:30–12:30 | LUNCH | | | | |
| 12:30 | GROUP A 7011 VEHICLE STOPS — GROUP B 7011 VEHICLE STOPS | GROUP A FAD — GROUP B 7011 VEHICLE STOPS | GROUP A 7014 REMOVAL & TRANS. OF RELUCTANT SUSPECTS 210/G18 DMD — GROUP B 7014 REMOVAL & TRANS. OF RELUCTANT SUSPECTS 210/G18 DMD | GROUP A FAD — GROUP B FAD | GROUP A PID — GROUP B PID |
| 1:30 | | | | | |
| 1:30 | | | | | |
| 2:30 | | | | | |
| 2:30 | GROUP A PID — GROUP B PID | GROUP A PID — GROUP B PID | GROUP A PID — GROUP B FAD | 1120 EVIDENCE (2) | 1120 EVIDENCE (3) |
| 3:30 | | | | | |
| 3:30 | | | | | |
| 4:30 | DMD | DMD | DMD | LGD | LGE |
| AFTER HOURS | | | | | |

# FEDERAL LAW ENFORCEMENT TRAINING CENTER
## POLICE TRAINING

BLDG.NO: 262
ROOM NO: N-3
WEEK NO: 6

FACULTY ADVISOR: ROD LANE
EDUCATIONAL AIDE: BARBARA SULLIVAN

CLASS NO.: 8PT-915          AGENCY: MIXED

| HOURS | MON 10/9 (22) | TUE 10/10 (23) | WED 10/11 (24) | THU 10/12 (25) | FRI 10/13 (2..) |
|---|---|---|---|---|---|
| 7:30 | HOLIDAY | 5082 REPORT WRITING (1) | 2502 DYNAMICS OF TERRORISM PART I | 1100 DETENTION AND ARREST (1) | 1100 DETENTION AND ARREST (2) |
| 8:30 | | | | | |
| 8:30 | | | | | |
| 9:30 | | | EOD | ETD | LGD |
| 9:30 | HOLIDAY | GROUP A FAD / GROUP B PTD | GROUP A PTD / GROUP B FAD | GROUP A PTD / GROUP B PTD | GROUP A PTD / GROUP B FAD |
| 10:30 | | | | | |
| 10:30 | | | | | |
| 11:30 | | | | | |
| 11:30-12:30 | LUNCH | | | | |
| 12:30 | HOLIDAY | GROUP A FAD / GROUP B PTD | GROUP A PTD / GROUP B FAD | GROUP A FAD / GROUP B PTD | GROUP A PTD / GROUP B FAD |
| 1:30 | | | | | |
| 1:30 | | | | | |
| 2:30 | | | | | |
| 2:30 | HOLIDAY | 2020 VIOLENT DEATH | 2018 RAPE INVESTIGATION | 5082 REPORT WRITING (2) | 2502 DYNAMICS OF TERRORISM PART II |
| 3:30 | | | | | |
| 3:30 | | ETD | ETD | ETD | EOD |
| 4:30 | | | | | |
| AFTER HOURS | | GROUP A 5:30-10:30 PM OSS NIGHT PE | GROUP B 5:30-10:30 PM OSS NIGHT PE | | |

FEDERAL LAW ENFORCEMENT TRAINING CENTER
POLICE TRAINING

BLDG. NO: 262
ROOM NO: N-3
WEEK NO: 7

FACULTY ADVISOR: ROD LANE
EDUCATIONAL AIDE: BARBARA SULLIVAN

CLASS NO.: 8PT-915          AGENCY: MIXED

| HOURS | MON 10/16 (27) | TUE 10/17 (28) | WED 10/18 (29) | THU 10/19 (30) | FRI 10/20 (31) |
|---|---|---|---|---|---|
| 7:30 8:30 8:30 9:30 | 5082 REPORT WRITING (3) | 2502 DYNAMICS OF TERRORISM  PART III   EOD | 5082 REPORT WRITING (4)   EOD | 2506 INTELLIGENCE RECOGNITION   EOD | 5082 REPORT WRITING (5)   EX... |
| 9:30 10:30 10:30 11:30 | GROUP A FAD / GROUP B PTD | GROUP A PTD / GROUP B PTD | GROUP A PTD / GROUP B PTD | GROUP A PTD / GROUP B PTD | GROUP A PTD / GROUP B PTD |
| 11:30–12:30 | LUNCH | | | | |
| 12:30 1:30 1:30 2:30 | GROUP A FAD / GROUP B PTD | GROUP A PTD / GROUP B FAD | GROUP A FAD / GROUP B FAD | GROUP A PTD / GROUP B FAD | GROUP A FAD / GROUP B PTD |
| 2:30 3:30 3:30 4:30 | 1100 DETENTION AND ARREST (3)   LGD | 1100 DETENTION AND ARREST (4)   LGD | 1100 DETENTION AND ARREST (5)   LGD | 1120 SELF-INCRIMINATION   LGD | 1210 SEARCH AND SEIZURE (1)   I |
| AFTER HOURS | | | | | |

FEDERAL LAW ENFORCEMENT TRAINING CENTER
POLICE TRAINING

BLDG. NO: 262
ROOM NO: N-3
WEEK NO: 8

FACILITY ADVISOR: ROD LANE
EDUCATIONAL AIDE: BARBARA SULLIVAN

CLASS NO.: 8PT-915

AGENCY: MIXED

| HOURS | MON 10/23 (32) | TUE 10/24 (33) | WED 10/25 (34) | THU 10/26 (35) | FRI 10/27 (36) |
|---|---|---|---|---|---|
| 7:30 | EXAM III | 2503 FIRST RESPONSE | 2501 COUNTER-TERRORISM (AVOIDANCE) | 2507 SURVIVING HOSTAGE SITUATIONS | 5010 CROWD CONTROL (1) |
| 8:30 | MR. LANE | | | | |
| 9:30 | EXAM REVIEW - 15 MIN. | | ETD | ETD | ETD |
| 9:30 | GROUP A PTD    GROUP B PTD | 2508 WEAPONS/EXPLOSIVES DETECTION | 2504 HANDLING SENSITIVE/CLASSIFIED INFORMATION | 2505 IDENTIFICATION AND SAFE HANDLING OF FIREARMS | 2550 DANGEROUS MOTORCYCLE GANGS |
| 10:30 | | | | | |
| 11:30 | | ETD | ETD | ETD | ETD |
| 11:30-12:30 | LUNCH | | | | |
| 12:30 | GROUP A PTD    GROUP B FAD | 2509 BOMBS AND EXPLOSIVES (1) | 2509 BOMBS AND EXPLOSIVES (2) | 2509 BOMBS AND EXPLOSIVES (3) | 2509 BOMBS AND EXPLOSIVES (4) |
| 1:30 | | | | | |
| 2:30 | | ETD | ETD | ETD | ETD |
| 2:30 | 1210 SEARCH AND SEIZURE (2) | 1210 SEARCH AND SEIZURE (3) | 1210 SEARCH AND SEIZURE (4) | 1210 SEARCH AND SEIZURE (5) | 1210 SEARCH AND SEIZURE (6) |
| 3:30 | | | | | |
| 4:30 | LGD | LGD | LGD | LGD | LGD |
| AFTER HOURS | | | | 4:30 PM - 12:30 AM PRACTICAL EXERCISE | |

FEDERAL LAW ENFORCEMENT TRAINING CENTER
POLICE TRAINING

FACULTY ADVISOR: ROD LANE
EDUCATIONAL AIDE: BARBARA SULLIVAN

CLASS NO.: 8PT-915          AGENCY: MIXED

BLDG.NO: 262
ROOM NO: N-3
WEEK NO: 9

| HOURS | MON 10/30 (37) | TUE 10/31 (38) | WED 11/1 (39) | THU 11/2 (40) | FRI |
|---|---|---|---|---|---|
| 7:30 | 5010 CROWD CONTROL (2) | GROUP A 5010 PATROL TECHNIQUES | GROUP B 5010 CROWD CONTROL (GAS) | 7:30 UNIFORM TURN-IN BUILDING 28 | |
| 8:30 | | FINAL PE | GROUP A 1910 COURT TESTIMONY (MOCK TRIAL) | 8:00 PROGRAM CRITIQUES | |
| 8:30 | | | | FACULTY ADVISOR | |
| 9:30 | 1910 COURT TESTIMONY LECTURE | | COURTROOMS 1, 2, 3 | 9:30 GRADUATION LARGE AUDITORIUM BUILDING 90 | |
| 9:30 | | | BLDG: 69 | | |
| 10:30 | | | | | |
| 10:30 | | | | | |
| 11:30 | LGD | BOD4 ETD4 EOD BSD3 LGD | EOD LGD | EOD | |
| 11:30-12:30 | LUNCH | | | | |
| 12:30 | 2521 PHYSICAL SECURITY | GROUP A 5082 REPORT WRITING | GROUP A 5010 CROWD CONTROL (GAS) | | |
| 1:30 | | GROUP B PATROL TECHNIQUES FINAL PE | GROUP B 1910 COURT TESTIMONY (MOCK TRIAL) | | |
| 1:30 | ETD | | COURTROOMS 1, 2, 3 | | |
| 2:30 | FINAL EXAM | | BLDG: 69 | | |
| 2:30 | MR. LANE | | | | |
| 3:30 | | | | | |
| 3:30 | | BOD4 ETD4 EOD BSD | | | |
| 4:30 | EXAM REVIEW - 15 MIN | EOD | EOD LGD | | |
| AFTER HOURS | | | | | |