## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RICHARD GONG,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**MICHAEL CHERTOFF, SECRETARY,** )<br>**UNITED STATES DEPARTMENT OF** )<br>**HOMELAND SECURITY,** )<br>)<br>**Defendant.** )<br>) | **Civil No. 06-0125 (RWR)** |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Defendant, through counsel, the United States Attorney for the District of Columbia, respectfully files this reply memorandum in response to plaintiff *pro se*'s Motion to Deny Defendant's Request for Motion to Dismiss or Motion for Summary Judgment ("Plaintiff's Motion"). Plaintiff has not established a prima facie case of discrimination. Plaintiff did not complete the necessary training for his position, and any action taken by defendant was based upon plaintiff's failing to fulfill the requirements of the job. Accordingly, for reasons stated in defendant's motion and herein, defendant respectfully reiterates its request that the Court dismiss this suit or enter summary judgment in defendant's favor.

## ARGUMENT

### I. Plaintiff Failed to Exhaust His Administrative Remedies With Respect to the Hostile Work Environment Claims.

In plaintiff's administrative Complaint of Discrimination, he alleged that the Federal Protective Service ("FPS" or "Agency") should not have required him to complete the Mixed

Basic Police Training Course ("MBPTC").  He claimed that the agency's reasons for requiring

him to do so were discriminatory, based upon his race (Asian) and national origin (Chinese).

Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

("Defendant's Motion, Exhibit 4 (Report of Investigation).  In plaintiff's Complaint, he alleged

that the Federal Protective Service "failed to promote . . . and violated FPS policies."  Complaint

p. 1.  However, in Plaintiff's Motion, he now makes claims of "harassment" and "hostile work

environment" based upon his race (Asian-American), national origin (Chinese), and color (dark-

skinned)."  Plaintiff's Motion at pp. 1-2.  At the administrative level, plaintiff failed to make the

hostile work environment claims, and failed to allege that any discrimination was based upon his

color.  Therefore, he has failed to exhaust his administrative remedies regarding these claims and

their dismissal is appropriate.

     In order to raise a claim under Title VII, a plaintiff must exhaust administrative remedies

by contacting an Equal Employment Opportunity ("EEO") counselor within forty-five (45) days

of the alleged discriminatory event.  Park v. Howard University, 71 F.3d 904, 907 (D.C. Cir.

1995), cert. denied, 519 U.S. 811 (1996); 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.105(a)(1)

("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the

matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the

effective date of the action.").   The 45-day time requirement is not jurisdictional, but operates

like a statute of limitations.  Bayer v. U.S. Dep't of Treasury, 956 F. 2d 330, 332 (D.C. Cir

1992); Gilmore v. Reno, 33 F. Supp 2d 20, 24 (D.D.C. 1998).  The exhaustion requirement

"serves the important purposes of giving the charged party notice of the claim and narrow[ing]

the issues for prompt adjudication and decision." Park, 71 F.3d at 907 (citation omitted).

Moreover, it "gives federal agencies an opportunity to handle matters internally wherever possible" and "ensure(s) that the federal courts are burdened only when reasonably necessary." Brown v. Marsh, 777 F. 2d. 8, 14 (D. C. Cir 1985). This requirement is "not a mere technicality[;]" the Court of Appeals has admonished that a district court should not "allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." Park, 71 F. 3d at 907 (reversing judgement of district court based on Plaintiff's failure to exhaust administrative remedies); Childers v. Slater, 44 F.Supp.2d 8, 16 (D.D.C. 1999) (same). See also Cones v. Shalala, 945 F.Supp. 342, 348 (D.D.C. 1996) (failure to pursue administrative claims bars subsequent federal court action); Jarrell v. U.S. Postal Service, 753 F.2d 1088, 1091 (D.C. Cir. 1985)(a timely administrative change is a prerequisite to an initiation of a Title VII action in District Court).[1] Accord Bowden v. United States, 106 F. 3d 433, 437 (D.C. Cir 1996)(same). Otherwise, allowing a complaint to encompass allegations outside the ambit of the predicate Equal Employment Opportunity Commission ("EEOC") charge "would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." Marshall v. Federal Express Corp., 130 F. 3d 1095, 1098 (D.C. Cir 1997). Summary judgment or dismissal is appropriate in cases where the plaintiff has failed to exhaust these administrative remedies. Jensen v. Frank, 912 F.2d 517 (1st Cir. 1990); Saltz v. Lehman, 672 F.2d 207 (D.C. Cir. 1982); EEOC v. Boorstin, 751 F.2d 1405 (D.C. Cir. 1985); DeMedina v.

---

[1] A federal court need not consider a complaint brought outside the 45-day period, even if the agency itself accepted and investigated the untimely claim. See e.g., Oaxaca v. Roscoe, 641 F. 2d 386, 390 (5th Cir 1981); DuVall v. U.S. Postal Service, 585 F. Supp. 1374, 1376 (D.D.C. 1984), aff'd, 774 F. 2d 510 (D.C. Cir 1985).

Reinhardt, 444 F. Supp. 573 (D.D.C. 1978); see Brown v. General Services Admin., 425 U.S. 820, 832 (1976).

Because, on the administrative level, plaintiff failed to raise the claims of hostile work environment and discrimination based upon color, plaintiff has failed to exhaust his administrative remedies. Summary judgment or dismissal of these claims is appropriate.

Even if plaintiff had properly raised the claim of hostile work environment, plaintiff could not prevail. To establish a hostile work environment, plaintiff must show that (1) he was a member of a protected class or participated in EEO protected activities; (2) he was subjected to harassment; (3) the harassment complained of was based upon his race or national origin; (4) the charged race or national origin harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment; and (5) the existence of respondeat superior liability. See e.g. Davis v. Coastal International Security, Inc., 275 F.3d 1119, 1122-23 (D.C. Cir. 2002).

A workplace environment becomes hostile for the purposes of Title VII only when offensive conduct "permeate[s] [the workplace] with 'discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create[s] an abusive working environment.'" Stewart v. Evans, 275 F.3d 1126, 1133 (D.C. Cir. 2002); Barbour v. Browner, 181 F.3d 1342, 1347-1348 (D.C. Cir. 1999) quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998). The Court of Appeals has stated that "not all abusive behavior, even when it is motivated by discriminatory animus, is actionable." Barbour, 181 F.3d at 1347. Rather, the conduct must be severe and pervasive enough to create an objectively hostile or abusive environment.

4

To determine whether a reasonable person would find the environment hostile or abusive, the Supreme Court outlined a totality of the circumstances test in Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993). The Harris Court stated that whether the environment is "hostile" or "abusive" can only be determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. Id. at 23. Plaintiff must meet this standard in order to establish a hostile work environment claim because, as the Supreme Court noted, "Title VII does not provide a cause of action for 'ordinary tribulations of the workplace.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Plaintiff states that, in February of 2001, during training with the United States Marshals Service, Agent Charles Moore "discriminated against [him] . . . with . . . constant harassment . . . which created a hostile work environment." Plaintiff's Motion at p. 4. However, this alleged conduct was not caused by the Federal Protective Service. Agent Moore was a Supervisory Instructor/Inspector with the U.S. Marshals Service Training Academy. See Defendant's Motion, Exhibit 15 (Moore Affidavit). He was not employed by the Federal Protective Service, and defendant had no respondeat superior liability for his actions. Moreover, even if plaintiff was subjected to a hostile work environment, he cannot establish that this conduct had the effect of creating an intimidating, hostile, or offensive working environment at the Federal Protective Service. See Harris, 510 U.S. at 23.

## II.  Plaintiff Failed to Establish a Prima Facie Case of Discrimination.

The procedure for resolving a claim of discrimination under Title VII is well-established. Under the scheme first set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), the

5

burdens of production shift from employee to employer. The plaintiff must first, by a preponderance of the evidence, establish a *prima facie* case of discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 506 (1993). Plaintiff's *prima facie* case, without additional proof to the contrary, must give rise to an inference that the defendant's conduct was discriminatory. If the employee meets this burden, the employer may then introduce evidence of a legitimate, nondiscriminatory reason for its action. See McDonnell Douglas, 411 U.S. at 802. If both parties meet their burden, plaintiff is then required to show that the employer's "proffered reason was not the true reason for the employment decision," and that plaintiff's membership in a protected class was the true reason for the employment action. St. Mary's Honor Center, 509 U.S. at 510; see also Aka v. Washington Hosp. Center, 156 F.2d 1284, 1292-93 (D.C. Cir. 1988)(en banc); Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1554 (D.C. Cir. 1997). Plaintiff must present substantial and credible evidence of discrimination in order to survive a motion for summary judgment. See Hastie v. Henderson, 121 F.Supp. 2d 72, 77 (D.D.C. 2000) aff'd, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001) ("To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'").

To establish a *prima facie* case of disparate treatment race or national origin discrimination under Title VII, a plaintiff must show that: (1) he is a member of a protected class; (2) he suffered adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. See Mastro v. Potomac Electric Power Co., 447 F.3d 843, 859 (D.C. Cir. 2006) citing George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005)(additional citations omitted). On the basis of race (Asian-American) and national origin (Chinese), plaintiff, is a

member of a protected group.  However, plaintiff cannot satisfy the second element of the test because none of the actions about which plaintiff complains were adverse employment actions.

To establish an adverse employment action within the meaning of Title VII, an employee must demonstrate an objectively tangible harm.  Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001).  The District of Columbia Circuit has determined that "[a]n 'adverse employment action' . . . is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir.2006).  An adverse action occurs "when an employee 'experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006)(quoting Farce v. Powell, 306 F.3d 1127, 1130-31 (D.C. Cir.2002)).  See Brown v. Brody, 199 F.3d 446, 458 (D.C. Cir. 1999)(an "adverse personnel action" requires, at a minimum, serious, objectively tangible employment consequences); Crady v. Liberty Nat'l and Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993) ("a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience") (cited with approval in Farce v. Tanoue, 131 F. Supp.2d 36, 40 (D.D.C. 2001).  While "'being aggrieved is necessary to state a claim . . . it is not sufficient to demonstrate that a particular employment action was adverse.'" Broderick v. Donaldson, 437 F.3d at 1233 (quoting Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006).  In addition, "[n]ot everything that makes an employee unhappy is an actionable adverse action. . . ." Russell v. Principi, 257 F.3d at 818.  "'[P]urely subjective

injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions."  Nichols v. Truscott, 424 F.Supp.2d 124, 136 (D.D.C. 2006).

**A.  There is No Evidence of Adverse Employment Action.**

                   1.  Requiring Plaintiff to Complete the Mixed Basic Police Training Course Was Not an Adverse Employment Action.

Plaintiff appears to assert that the Federal Protective Service requirement that he complete the Mixed Basic Police Training Course ("MBPTC") was an adverse employment action.  According to plaintiff, the Official Vacancy Announcement for the position of Physical Security Specialist/Law Enforcement Security Officer only required the training course to be completed, "if it had not been completed upon entry."  See Plaintiff's Motion, Exhibit 4. Plaintiff claims that, because he completed the MBPTC in 1989 and 1997, he should have been exempted from the training.  Hence, requiring him to complete it was discriminatory.  See id. at p. 3 and Exhibit 4.[2]

The Vacancy Announcement for the position does state that "[c]andidates selected must successfully complete the . . . training program if not already completed."  Id.  However, General Service Administration regulations regarding the appointment of personnel to the Federal Protective Service, under 40 U.S.C. § 318,[3] state that personnel other than Federal Protective Police Officers

(1) Must be a graduate of the FLETC [Federal Law Enforcement Training Center] basic police school or a former Federal Protective Service Police Academy, with

---

[2] Plaintiff claims that he has submitted transcripts indicating that he is an "FLETC graduate."  Id.  However, plaintiff has not submitted such transcripts in his pleadings.  Plaintiff has only provided the course schedule for training that occurred in 1989.  See id., Exhibit 12.

[3] This statute was recodified as 40 U.S.C. § 1315.

no break in employment of longer than 3 years with the FPSD [Federal Protective Service Division].

(2) In addition to the requirement outlined in paragraph (1), the individual must successfully complete the following training prior to appointment:

**Employee must have no break in employment in the law enforcement field of longer than 3 years after graduating from training.** (emphasis added).

Defendant's Motion Exhibit 5 p. 3 (Memorandum of October 3, 1998)(emphasis added). Therefore, all candidates for the position who have a break in employment in the law enforcement field of longer than three years after graduating from training are required to successfully complete the Mixed Basic Police Training Course, even if they had graduated from the FLETC.[4]   The training is a basic requirement for employment.  Defendant's Motion at p. 8, Exhibit 13 (Notification of Personnel Action, April 8, 2001).

Plaintiff's last employment in the law enforcement field ended on April 7, 2001.  The last training he *completed* at the Federal Law Enforcement Training Center was in 1997.  Plaintiff's Motion at p. 3.[5]  Plaintiff joined the Federal Protective Service on April 18, 2004.  Id., Exhibit 2 (Notification of Personnel Action, April 18, 2004).  Therefore, plaintiff had a break in employment in the law enforcement field of longer than three years after graduating from

---

[4]While exceptions can be made on a case-by-case basis, no exception was available to plaintiff.  See infra p. 10 n.8.

[5]On February 11, 2001, plaintiff was changed to a lower grade to become a Deputy United States Marshal.  See Defendant's Motion at p. 8, Exhibit 11 (Notification of Personnel Action, February 11, 2001).  He was sent to the Federal Law Enforcement Training Center to attend the Deputy Marshal Training Course.  See id., Exhibit 4, p. 1 (Complaint of Discrimination).  However, plaintiff left that training after two weeks and, on April 7, 2001, returned to his former position.  See id.

9

training.[6]  Hence, despite plaintiff's contentions, he was not exempt from the Mixed Basic Police

Training Course.  Rather, agency regulations required that plaintiff successfully complete the

training.  Requiring plaintiff to comply with basic job requirements is not a significant change in

plaintiff's employment status.  Therefore, plaintiff suffered no adverse employment action.

2.  <u>Plaintiff Was Ineligible For In-Service Training.</u>

Plaintiff refers to the Federal Protective Service Policy Handbook to assert that he should

have been permitted to complete in-service training rather than the Mixed Basic Police Training

Course.  Plaintiff's Motion at p. 5.  Plaintiff appears to argue that his inability to receive this

alternate training was an adverse employment action.  The Federal Protective Service Policy

Handbook indicates that Federal Protective Service Police Officers and Law Enforcement

Security Officers may:

> [c]omplete the in-service training prescribed for Federal Protective Service Police
> Officer[s] and Law Enforcement Security Officers, if [the] training [at the
> FLETC] was not met within the last 3 years.

However, the Policy Handbook also states that Federal Protective Service Police Officers and

Law Enforcement Security Officers:

> must have no break in employment in the law enforcement field of longer than 3
> years.

Defendant's Motion, Exhibit 6, p. 7 (Office of Federal Protective Service Policy

Handbook).  Plaintiff asserts that because he graduated from the FLETC in 1989 and 1997, he

should have been permitted to complete the in-service training.  He argues that the courses he

---

[6]Plaintiff admits that he has not been in law enforcement for over three years.  <u>See</u> <u>e.g.</u>
Plaintiff's Motion at p. 4 ("The break of more than three years employment was caused by Mr.
Charlie Moore[] . . . ."; <u>id</u>. at 6 (Even with the break of three years, the agency . . . denied not
(sic) to send me to the refresher training.")

took in 1989 while training with the U.S. Secret Service were "identical to the courses presented by the FLETC."[7]  Plaintiff's Motion at p. 11.  However, even if plaintiff had graduated from the FLETC fifteen or seven years earlier, he still could not fulfill the requirement that he have no break in employment in the law enforcement field of longer than three years.  Therefore, plaintiff was ineligible for in-service training.  His inability to take this training was not a significant change in his employment status, and was not an adverse employment action.

        3.  <u>Plaintiff Was Ineligible for the Advanced Law Enforcement Refresher Training.</u>

Plaintiff contends that defendant had opportunities to send him to the Advanced Law Enforcement Refresher Training ("ALERT").  <u>Id</u>. at pp. 5-6.  Plaintiff states that a "Memo[randum] dated October 28, 2004, . . . clearly show[ed that the] refresher training course of ALERT [was] available and . . . mandatory for employees."  <u>Id</u>. at p. 6.  Plaintiff argues that "[e]ven with the break of three years, the agency purposely and willfully denied not (sic) to send me to the refresher training."  <u>Id</u>.  He appears to argue that not doing so was an adverse employment action.

The October 28, 2004 memorandum describes "[t]he ALERT program [as a mandatory, *continuing*, career-development curriculum for all Federal Protective Service (FPS) law enforcement personnel." (emphasis added).  <u>See Id</u>., Exhibit 9, at p. 1.  The memorandum indicates that "*[a]fter* initial FLETC basic training, all FPS law enforcement personnel must complete the ALERT program . . . ."  <u>Id</u>. (emphasis added).  However, because of the three-year break in law enforcement employment, the FPS determined that plaintiff had not completed the

_____

[7]Plaintiff attached to his motion, what he claimed to be "a copy of the Police Training Schedule . . . [and courses he] completed . . . in 1989 . . . ."  <u>Id</u>.

11

necessary FLETC basic training.  Therefore, plaintiff was not in the position to be sent to the

ALERT program, and not sending him could not have been an adverse employment action.[8]

    4. <u>Plaintiff Was Not Denied the Position of Physical Security Specialist/Law Enforcement Security Officer.</u>

In his motion, plaintiff claims he was:

> denied a position as Physical Security Specialist/Law Enforcement Security
> Officer because the agency . . . claimed that [he had] not completed the Mixed
> Basic Police Training Course.  [He] was reclassified to a lower position by . . .
> management as only a Physical Security Specialist with no arrest authority or
> police powers.

Plaintiff's Motion at p. 1 n.1.  Plaintiff also claims that the 'defendant made significantly (sic)

changes to [his] responsibilities by changing his duties . . . ."  <u>Id</u>. at p. 2.  Plaintiff appears to

assert that these were adverse employment actions.

According to agency regulations, in order to fulfill the requirements of the position of

Physical Security Specialist/Law Enforcement Security Officer, one must complete the Mixed

Basic Police Training Program or be a graduate of the Federal Law Enforcement Training Center

basic police school, and have "no break in employment in the law enforcement field of longer

than three years after graduating from training."  Defendant's Motion, Exhibit 5, p. 3

(Memorandum of October 4, 1988).  Certain individuals can complete in-service training rather

---

[8]According to the Report of EEO Counseling, plaintiff claimed that he asked the agency "to review the current regulations and apply the appropriate training or waive the requirement for full basic training . . . ."  <u>See</u> Defendant's Motion, Exhibit 9, p. 5 (Report of EEO Counseling). However, plaintiff now states that he "never seek (sic) a waiver or asked for the waiver." Plaintiff's Motion at p. 6.  Nevertheless, whether or not plaintiff sought a waiver of the training requirements, FPS Mission Support Deputy Director Kenneth Ehinger and FPS National Training Academy Acting Director Gary Beard would not to waive plaintiff's training requirement, and plaintiff was required to complete the Mixed Basic Police Training Course. Defendant's Motion, Exhibit 9, p. 9 (Report of EEO Counseling).

than complete the MBPTC, but they too must have no break in employment in the law enforcement field of longer than three years. Id., Exhibit 6, p. 7 (Office of Federal Protective Service Policy Handbook).

The last training plaintiff completed was approximately seven years before joining the Federal Protective Service. See supra p. 8 n.5. In addition, plaintiff had a break in employment in the law enforcement field of longer than three years after graduating from that training. See supra p. 8. Therefore, the agency determined that it was necessary for plaintiff to complete the Mixed Basic Police Training Course in order to fulfill the requirements of his job. Because plaintiff did not complete that training, he could not be given arrest authority or police powers, and was reclassified as a Physical Security Specialist.[9] According to the affidavit of FPS Acting Director Beard,

> the agency cannot measure [an employee's] ability to perform the job requirements unless he attends and passes the mandated training for the position for which he was hired. The agency would be placing itself in a position of potential liability should they hire an employee, and provide [him] the authority to arrest and potentially take human life in the deployment of deadly force without ensuring that proper measures were taken to train the prospective employee.

See Defendant's Motion at p. 13. Exhibit 10, p. 1 (Beard Affidavit).

Clearly, plaintiff was not *denied* the position of Physical Security Specialist/Law Enforcement Security Officer. By refusing to complete the training as required, he has denied himself the position.[10] While plaintiff may have had a change in employment status and duties

---

[9]Plaintiff's Employment Performance Review and Rating indicates that plaintiff had "not complet[ed the] required training to fulfill the conditions of Police Certification." See Plaintiff's Motion, Exhibit 2.

[10]Plaintiff was scheduled to begin the Mixed Basic Police Training Program on July 28, 2004. Defendant's Motion at p. 2, Exhibit 7, p. 1 (Gong Affidavit). Plaintiff appeared for the

because of his reclassification, the change was not the result of any discriminatory action on the part of the agency. Rather, it was because plaintiff failed to complete the requirements for the job.[11]

According to plaintiff, "[i]n 2005 [he] announced to FPS that [he] was transferring to another federal agency." Plaintiff's Motion at p. 8. Plaintiff, nevertheless, complains that he was "replace[d] . . . with another Physical Security Specialist/Law Enforcement Security Officer before [he] could transfer out to [the other] federal agency." Id. at p. 2. He appears to claim that his being replaced was an adverse employment action. However, plaintiff failed to complete the training required to perform the duties of a Physical Security Specialist/Law Enforcement Security Officer. Because of that, his classification was changed to Physical Security Specialist. See Id. at p. 1 n.1. The agency's decision to hire someone to fill the vacant position of Physical Security Specialist/Law Enforcement Security Officer was not a significant change in plaintiff's employment status. Plaintiff announced that he was leaving that agency, and it was not unreasonable for the agency to hire someone who could perform all of the duties of the position.

_____

training on July 28, 2004, but was removed because he "knowingly showed up with a neck injury that he knew would prohibit him from any training activity." See id., Exhibit 8 (Electronic Mail Message dated September 9, 2004). Plaintiff was told he would have to complete the training in November 2004 or early in 2005. See id., Exhibit 9, p. 5 (Report of EEO Counseling). Plaintiff did not complete the training.

[11]The Vacancy Announcement for the position indicated that the Physical Security Specialist/Law Enforcement Security Officer "[o]n a regular and recurring basis, performs duties as a uniformed law enforcement official under 40 U.S. Code 318." See Defendant's Motion, Exhibit 3, p. 2 (General Services Administration Vacancy Announcement). "[P]ersons possessing 40 U.S.C. 318 or 381d authority may exercise all of the police powers, except the power to serve civil process . . . This include[s] the power to make arrests." See Defendant's Motion, Exhibit 6, p. 5 (Office of Federal Protective Service Policy Handbook). Because plaintiff had not completed the required training, plaintiff was unable to perform the duties of a uniformed law enforcement official.

    5.  <u>Plaintiff Was Ineligible for Promotion as a Physical Security Specialist/Law
        Enforcement Security Officer.</u>

Plaintiff claims that defendant "failed to promote [him] to the next grade of GS-11 after

one year of satisfactory performance."  Plaintiff's Motion at p. 2; <u>see</u> Complaint p. 1.  In order to

demonstrate a *prima facie* case of discriminatory failure to promote, plaintiff must show by a

preponderance of the evidence: (1) that he belongs to a protected group; (2) that he was qualified

for and applied for a promotion; (3) that he was rejected despite his qualifications; and (4) the

unfavorable action gives rise to an inference of discrimination.  <u>Stella v. Mineta</u>, 284 F.3d 135, 145

(D.C. Cir. 2002).  Absent a "demonstrably discriminatory motive," the Court must defer to

defendant's decision of what non-discriminatory qualities it deemed necessary in filling the

position at issue.  <u>Brown v. Small</u>, 2006 WL 1888562 at *5 (D.D.C. July 7, 2006) (RBW).  <u>See</u>

<u>Barnette v. Chertoff</u>, 453 F.3d 513 (D.C. Cir. 2006).

Although plaintiff is a member of a protected group, he was not qualified for a

promotion.   Plaintiff's Employment Performance Review and Rating, for the period of October

1, 2004 through September 30, 2005, indicated that he had "not complet[ed the] required training

to fulfill the conditions of Police Certification." <u>See</u> Plaintiff's Motion, Exhibit 2.  Further,

because plaintiff did not complete the training, he was not performing the duties of a Physical

Security Specialist/Law Enforcement Security Officer, and had to be reclassified.  Clearly,

plaintiff did not complete one year of satisfactory performance in the position of Physical

Security Specialist/Law Enforcement Security Officer, and was not entitled to a promotion to the

next grade level in that position.

Plaintiff also claims that he has been denied law enforcement coverage, and appears to

assert that this was an adverse employment action.  <u>Id.</u> at p. 1.  Plaintiff states that "[t]he Merit

System Protection Board has granted law enforcement officer retirement to those that meet certain criteria. [Plaintiff claims that he] has held a law enforcement retirement in prior federal employments . . . and would be granted this status." Id. at n.3.

In his motion, plaintiff fails to establish how he "would be granted this status," and the incomplete exhibit he attaches to his motion fails to do so as well. See id., Exhibit 1. However, if plaintiff is claiming that defendant is denying him law enforcement retirement because he is not classified as a Physical Security Specialist/Law Enforcement Security Officer, plaintiff is incorrect. Clearly, if plaintiff had completed the required training, he would have the necessary classification. The fact that plaintiff does not have the law enforcement retirement coverage he desires is solely because he has failed to complete the requirements of the position. Again, plaintiff failed to establish that the Federal Protective Service committed an adverse employment action.

6. Any Action by Agent Moore in 2001 Cannot Be a Basis for a Claim of Adverse Employment Action.

Plaintiff admits to having a three-year break in employment in the law enforcement field. See e.g., id. at pp. 4, 6. Because of this three-year break, plaintiff was required to complete the Mixed Basic Police Training Course. Plaintiff did not want to complete the training, and then claimed that the "break of more than three years from law enforcement was caused by [Agent Charles] Moore . . . ." Id. at p. 4. Specifically, plaintiff claims that Moore's "discriminatory and hostile actions . . . forced [him] to resign from the U.S. Marshal[s] Service in February 2001." Id. Plaintiff attempts to argue that, but for Agent Moore's discriminating against him at the Federal Law Enforcement Training Center, in 2001, plaintiff would have completed the training and "remained with the U.S. Marshal[s] Service . . . ." Id. at p. 4 n.7. In addition, "if [he] had

16

remained with the U.S. Marshal[s] Service, [he would not have had the three-year] break [from employment] in the law enforcement field" before joining the Federal Protective Service.  Id.

Plaintiff's argument is strained.  In February of 2001, Agent Moore was a Supervisory Instructor/Inspector at the U.S. Marshals Service Training Academy.  See Defendant's Motion, Exhibit 15 (Moore Affidavit).   He was not employed by the Federal Protective Service, and defendant cannot be held responsible for the alleged actions of an employee of another agency.

Plaintiff's argument also is fraught with supposition.  The mere fact that plaintiff *could have* completed the training in 2001, and *could have* remained at the U.S. Marshals Service before applying to the Federal Protective Service would be insufficient to support even a valid claim of discrimination.  See Probst v. Ashcroft, 25 Fed.Appx. 469, 2001 WL 1669397 (7th Cir. Dec. 28, 2001)(unpub.)("Hypothetical possibilities are not materially adverse employment actions.").  Cf. Hastie v. Henderson, 121 F.Supp. 2d 72, 77 (D.D.C. 2000), aff'd No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001) ("To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'").  Therefore, plaintiff's argument must fail.

Moreover, plaintiff failed to establish that Agent Moore discriminated against him in 2001.  First, in an affidavit, Agent Moore indicated that his contact with plaintiff in 2001 "was minimal at best."  Defendant's Motion, Exhibit 15 (Moore Affidavit).  Second, while plaintiff claims that "Deputy U.S. Marshal Student [Andy Fisher] . . . witnessed the discriminatory acts" of Agent Moore, Plaintiff's Motion at p. 3, the statement, purportedly written by Mr. Fisher, fails to establish that fact.  Specifically, the statement reads, in part:

17

> "Inspector Moore was always on you by singling you out by saying you shouldn't
> be there, and making comments about your PT ([P]hysical Training) abilities.
> With your PT abilities, he would always push you or 'brow beat you' per say to
> work harder.

Id., Exhibit 5.  There is nothing in the student's statement which indicates that Agent Moore

discriminated against plaintiff because of his race or national origin.  Rather, the statement

indicates that Agent Moore merely made comments about plaintiff's physical training abilities.

Third, plaintiff never filed a complaint of discrimination regarding the alleged acts committed in

2001.  See Defendant's Motion, Exhibit 1, p. 5 (Report of Investigation).  In fact, during the 2004

EEO investigation, plaintiff stated that the EEO Complaint, filed on September 28, 2004, "was

the only EEO complaint he ha[d] ever filed."  Id.  Finally, according to plaintiff's own affidavit,

after he collapsed during physical training in 2001, he voluntarily left the training academy, went

on sick leave, and found a job with another law enforcement agency.  See Id., Exhibit 7, p. 2

(Gong Affidavit).  Therefore, although plaintiff claims that he was forced to resign because of

Agent Moore's actions, the facts do not support plaintiff's claim.

       7.  Agent Moore and Acting Director Beard Did Not Require Plaintiff to
           Complete the Mixed Basic Police Training Course.

Plaintiff claims that, "upon taking the position [with FPS,] . . . former Deputy U.S.

Marshal Charlie Moore and [FPS Acting] Director Gary Beard purposely and willfully wanted to

place him in an extremely hostile work environment and repeat the harassment that happened in

February 2001."[12]  Plaintiff's Motion at p. 3.  Plaintiff appears to claim that their requiring him to

_____

    [12]Moore was employed as a Supervisory Special Agent in the Federal Protective Service
National Training Academy at this time.

complete the training was an adverse employment action.  Plaintiff is incorrect.[13]

According to Acting Director Beard, the training was "a requirement of the position for which [plaintiff] applied."  See Defendant's Motion at p. 9, Exhibit 10 p. 1 (Beard Affidavit).  In addition, Acting Director Beard indicated that, "it was not his decision to put [plaintiff] through the training."  See Id., Exhibit 9, p. 6 (Report of EEO Counseling).  According to Agent Moore, he "ha[d] no authority over waivers of training for the Federal Protective Service, and had no such involvement in [plaintiff's] case."  See id., Exhibit 15 (Moore Affidavit).  Further, Acting Director Beard's affidavit indicates that:

> [i]n order for the agency to insure that it has provided its personnel with the requisite skills necessary to minimally perform within the requirements of their position, it mandates that new hires go through their academy training program. . . . [T]he agency cannot measure [plaintiff's] ability to perform the job requirements unless he attends and passes the mandated training for the position for which he was hired.

Id., Exhibit 10 p. 1(Beard Affidavit).  Therefore, neither Agent Moore nor Acting Director Beard required plaintiff to undergo the training.  Rather, the completion of the training was mandated for plaintiff's position.

### B. <u>Plaintiff Failed to Establish That Any Persons Were Similarly Situated and Treated Differently.</u>

Plaintiff has failed to establish that he suffered any adverse employment action.  However, even if plaintiff had done so, he cannot show that the action gave rise to an inference of discrimination.  See Mastro, 447 F.2d at 859.  In order to establish that an adverse action gives rise to an inference of discrimination, the plaintiff will frequently attempt to show that similarly situated employees, not of plaintiff's protected class, were treated differently.  See, e.g., Laboy v.

---

[13]Acting Director Beard is Asian.  Defendant's Motion, Exhibit 10, p. 1 (Beard Affidavit).

O'Neill, 2002 WL 1050416 (D.C. Cir. Mar. 13, 2002); Cones v. Shalala, 199 F.3d 512, 517

(D.C. Cir. 2000); Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir.

1995); cf. Freedman v. MCI Telecommunications Corp., 255 F.3d 840 (D.C. Cir. 2001) (finding

no "evidence of disparate treatment" by comparing plaintiff's situation to others in firm).   In

order to raise an inference of discrimination in this manner, plaintiff must demonstrate that all of

the relevant aspects of his employment situation were '*nearly identical*' to those of the

comparators.   Neuren, 43 F.3d at 1514 (citing Pierce v. Commonwealth Life Ins. Co., 40 F.3d

796, 802 identical" language from Neuren); Barbour, 181 F.3d at 1345 (same); Mungin, 116 F.3d

at 1554 (same).

　　　Plaintiff has adopted the "comparator" method of proof by claiming that "Defendant . . .

treated similar (sic) situated individuals who did not attend the Mixed Basic Police Training

Program [or exceeded the three-year limit] . . . more favorably."  Plaintiff's Motion at p. 6.

Specifically, plaintiff alleges that Ellis Andrews and Leigh-Ann Hackney, both Caucasian, were

not required to complete the Mixed Basic Police Training Course.

　　　　　　1.  Mr. Andrews Was Not Similarly Situated to Plaintiff.

　　　In his Motion, plaintiff states that Mr. Andrew told him (plaintiff) that he had never

completed the Mixed Basic Police Training Course at Federal Law Enforcement Training Center.

Rather, he completed training at the Law Enforcement Training Center for the Veterans'

Administration, in Arkansas.  Id. at p. 7 and Exhibit 11.  Based upon this uncorroborated claim,

plaintiff asserts that Mr. Andrews also should have been required to complete the Mixed Basic

Police Training Course and not the in-service refresher training.

　　　However, according to the Affidavit of Federal Protective Service Mission Support

Deputy Director Kenneth Ehinger, Mr. Andrews was in a supervisory position and not required to meet the requirements established for plaintiff's position. Defendant's Motion, Exhibit 6 (Ehringer Affidavit). In addition, Mr. Andrews "continued to work in the law enforcement field for the Department of Defense prior to . . . entering on duty with the [Federal Protective Service]." Id. Therefore, he was qualified for the in-service training.

Because Mr. Andrews was in a supervisory position, did not have to meet the requirements of plaintiff's position, and did not have a three-year break in law enforcement employment prior to joining FPS, Mr. Andrews was not similarly situated to plaintiff. Therefore, Mr. Andrew's not having to complete the Mixed Basic Police Training Course cannot support an inference of discrimination. See Neuren, 43 F.3d at 1514.

### 2. Ms. Hackney Was Not Similarly Situated to Plaintiff.

Next, plaintiff makes the uncorroborated assertion that Ms. Hackney told him that she left the Bureau of Alcohol, Tobacco and Firearms over three years before joining the Federal Protective Service, but only had to complete the in-service training. Plaintiff's Motion at p. 8. However, in his Affidavit, Director Ehinger stated that Ms. Hackney "resigned from the Bureau of Alcohol, Tobacco, Firearms and Explosives[,] from a law enforcement position[,] on September 25, 2000. On February 25, 2003, Ms. Hackney received reappointment with [the Federal Protective Service]. . . . [T]his was well within the three-year limitation." Defendant's Motion, Exhibit 16 (Ehringer Affidavit). Again, because Ms. Hackney did not have the three-year break in law enforcement employment, her not having to complete the Mixed Basic Police Training Course cannot support an inference of discrimination. See Neuren, 40 F.3d at 1514.

3.  Unnamed Employee Was Not Similarly Situated to Plaintiff.

Finally, plaintiff states, "[i]n another similar case a[n] FPS employee was terminated because she did not attend the Mixed Basic Police Training."  Plaintiff's Motion at p. 9, Exhibit 3.  However, in that case, after having knee surgery, a field training officer was told that she *could not* complete the Mixed Police Basic Training Course.  Id.  After her surgery, she was advised by a doctor to not run.  Id.  A second opinion allowed her to "continue with activities as tolerated."  Id.  Nevertheless, this field training officer was fired because the agency determined that "she was medically incapable of completing job training" without verifying that this was, in fact, true.  Id.  An arbitrator found that the field training officer should be reinstated.  Id.

Plaintiff clearly is not similarly situated to this employee.  First, plaintiff was employed in a different position within the Federal Protective Service.  Second, plaintiff was not prevented from completing the Mixed Police Basic Training Course.  Rather, he was given an opportunity to complete the required training on July 28, 2004.  See Defendant's Motion, Exhibit 7 p. 1 (Affidavit of Richard Gong).  However, plaintiff "knowingly showed up with a neck injury that he knew would prohibit him from any training activity."  Id., Exhibit 8 (Electronic Mail dated September 9, 2004).  Plaintiff then was told that he could complete the training in November 2004 or early in 2005.  Id., Exhibit 9, p. 5 (Report of EEO Counseling).  Plaintiff did not complete the training.  Id., Exhibit 4 (Department of Homeland Security Complaint of Discrimination).  Finally, unlike the unnamed employee, plaintiff was not fired from the Federal Protective Service.  Rather, "in 2005, [he] announced to FPS that [he] was transferring to another federal agency."  Plaintiff's Motion at p. 8.  Therefore, the treatment of this unnamed employee cannot support an inference of discrimination.  See Neuren, 43 F.3d at 1514.

22

**III.  The Agency's Actions Were Taken for Legitimate, Non-Discriminatory   
Reasons and Plaintiff Cannot Establish That These Reasons Were Pretextual.**

Despite plaintiff's numerous attempts to establish that the Federal Protective Service

committed adverse employment actions, plaintiff has failed to establish a *prima facie* case of

discrimination.  As stated in defendant's Motion to Dismiss or Motion for Summary Judgment,

even if plaintiff could meet his *prima facie* burden with respect to disparate treatment, plaintiff

still could not prevail because the record demonstrates that the Federal Protective Service had

legitimate, nondiscriminatory reasons for requiring that plaintiff complete the Mixed Basic

Police Officers Training.  See McDonnell Douglas, 411 U.S. at 802 (holding that burden shifts to

defendant to articulate legitimate, nondiscriminatory reasons for its challenged actions, once

plaintiff makes out a prima facie case of discrimination).

> According to Acting Director Beard,
>
> [plaintiff's] previous law enforcement experience[ did] not match the job specific
> skill sets required of the position for which he was hired.  In order for the agency
> to insure that it has provided its personnel with the requisite skills necessary to
> minimally perform within the requirements of their position, it mandates that new
> hires go through their academy training program.  The FPS has mission specific
> skill sets, which are provided to students during the basic training for its law
> enforcement personnel.
>
>  . . . [T]he agency cannot measure [plaintiff's] ability to perform the job
> requirements unless he attends and passes the mandated training for the position
> for which he was hired.  The agency would be placing itself in a position of
> potential liability should they hire an employee, and provide [him] the authority to
> arrest and potentially take human life in the deployment of deadly force without
> ensuring that proper measures were taken to train the prospective employee.
>
> Defendant's Motion, Exhibit 10 p. 1 (Beard Affidavit).  Therefore, it is clear that the

Federal Protective Service had legitimate, nondiscriminatory reasons to require that plaintiff

complete the necessary training.[14]  In addition, plaintiff has pointed to no evidence in the record

to "demonstrate that the proffered reason was not the true reason for the employment decision."

<u>Burdine</u>, 450 U.S. at 256.

### IV.  Plaintiff Cannot Demonstrate that Defendant's Actions Were Taken In Retaliation For Statutorily-Protected Activity.

A *prima facie* case alleging retaliation or reprisal under Title VII is established when a

plaintiff demonstrates that (1) he or she engaged in protected behavior; (2) the employer took an

action against plaintiff with material consequences such that it would dissuade a reasonable

worker from making or supporting a charge of discrimination; and (3) there is a causal link

between the action and the protected activity.  <u>Rochon v. Gonzales</u>, 438 F.3d 1211, 1219-20

(D.C. Cir. 2006).  <u>See also</u> <u>Burlington Northern</u>, 126 S.Ct. 2405 (2006).  That is, a plaintiff must

demonstrate "materially adverse consequences . . . such that a reasonable trier of fact could

conclude that the plaintiff has suffered objectively tangible harm," which might have "dissuaded

a reasonable employee from making or supporting a charge of discrimination."  <u>Rochon</u>, 438

F.3d at 1219 (citing <u>Brown</u>, 199 F.3d at 457).  If the plaintiff is able to establish a *prima facie*

case of retaliation, then the Court should apply the <u>McDonnell-Douglas</u> analysis applicable to

discrimination claims.  <u>See</u> <u>supra</u> p. 4.

In his Motion, plaintiff alleges that he suffered threats of termination in retaliation for

statutorily-protected activity.  According to his EEO Complaint of Discrimination, on September

---

[14]Apparently, in an attempt to assert that he should not be required to complete the training, plaintiff argues that Director Beard indicated that "it was [plaintiff's] law enforcement EXPERIENCE not TRAINING that did not match the job . . . ."  Plaintiff's Motion at p. 6. However, importantly, Director Beard indicated that it was vital that plaintiff complete the training program because it was "a requirement of the position for which he applied."  <u>See</u> Defendant's Motion at p. 9, Exhibit 10 p. 1 (Beard Affidavit).

29, 2004, the day after plaintiff had spoken with his EEO Counselor, he received a telephone call

from his "supervisor" informing him that he would "be attending the Mixed Basic Police

Training on January 3, 2005."  See Defendant's Motion, Exhibit 4, p. 2.  The supervisor also told

plaintiff that "if [he did] not complete this training [he would] have to [be] let . . . go."  Id.

Plaintiff "believe[d] that this [was] reprisal because of [his] EEO filing."  Id.

        While plaintiff did engage in protected behavior, this telephone call did not amount to a

"materially adverse consequence . . . such that a reasonable trier of fact could conclude that . . .

plaintiff . . . suffered objectively tangible harm. . . ."  Brown, 199 F.3d at 457.  The September

29, 2004 telephone call merely reiterated to plaintiff that the completion of the training was a

requirement of his position.  The Vacancy Announcement indicated that "candidates selected

must successfully complete the [M]ixed Basic Officers Training Program . . . ."[15]  See

Defendant's Motion, Exhibit 3., p.3 (General Service Administration).  Plaintiff was scheduled

for that training on July 28, 2004.  See id., Exhibit 7, p. 1 (Gong Affidavit).  When plaintiff

appeared for the training on July 28, 2004 with a neck injury, he was told that he had to complete

the training in November of 2004 or in early 2005.  Id., Exhibit 8 (Electronic Mail dated

September 9, 2004).  On September 1, 2004, plaintiff told his EEO counselor that he was unable

to attend the training on July 28 2004, but he had "since been told that he is required to attend the

next available training in approximately November 2004 or early 2005."  See id., Exhibit 9, p. 5.

Therefore, between July 28 and September 1, 2004, plaintiff, again, was told that he was required

---

[15]The Open Period to apply for the position was December 3, 2003 through December 16, 2003.  Defendant's Motion, Exhibit 3 , p. 1 (General Service Administration Vacancy Announcement).   Plaintiff joined the Federal Protective Service on April 18, 2004.  See id., Exhibit 2 (Notification of Personnel Action, April 18, 2004).

to complete the training.  Clearly, plaintiff did not suffer objectively tangible harm from receiving a telephone call, on September 29, 2004,  informing him of that which he already was aware.

Assuming *arguendo* that, by receiving the telephone call, plaintiff suffered objectively tangible harm which may have "dissuaded a reasonable [employee] from making or supporting a charge of discrimination," Rochon, 438 F.3d at 1219, plaintiff still could not establish a causal link between the call and his statutorily-protected activity.  See id. at 1220.  To establish such a causal link a plaintiff must show that the "employer had knowledge of [the] protected activity and the adverse action took place shortly thereafter.  Nichols, 424 F.Supp.2d at 141; see Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985).  Here, plaintiff has not only failed to indicate who the supervisor was that telephoned him, but has also failed to indicate whether this supervisor had knowledge of plaintiff's EEO activity.

Further, even if the supervisor had knowledge of plaintiff's EEO activity, it was already clear that completion of the training was a condition of plaintiff's employment as a Physical Security Specialist/Law Enforcement Security Officer.   An employer's proceeding along lines previously contemplated is no evidence of causation.  See Clark County School District v. Breeden, 532 U.S. 268, 272 (2001).  Therefore, plaintiff's claim of retaliation must fail.

**CONCLUSION**

Plaintiff has failed to demonstrate that he suffered adverse employment action and cannot establish a prima facie case of discrimination.  In addition, defendant has established that its actions were taken for legitimate, non-discriminatory reasons and plaintiff has not shown that those reasons were pretextual.  Finally, plaintiff has failed to demonstrate that defendant acted in retaliation for plaintiff's statutorily protected activity.  Therefore, defendant's motion should be granted.

Respectfully submitted,


 /s/
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


 /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


 /s/
MARIAN L. BORUM, D.C. Bar #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on this 13th day of September, 2006, a copy of the foregoing

was sent by First-Class Mail, postage prepaid, to:


Richard Gong
PO. Box 25063
Arlington, Virginia 22202


/s/
MARIAN L. BORUM
ASSISTANT UNITED STATES ATTORNEY